**Nilsa M. RUIZ–RIVERA, Petitioner,**

**v.**

**A.D. MOYER, District Director, Immigration and Naturalization Service, Respondent.**

**No. 94 C 4480.**

United States District Court, N.D. Illinois, Eastern Division.

Jan. 12, 1995.

Ralph M. Schelly, Ralph M. Schelly, Ltd., Chicago, IL, for plaintiffs.

James G. Hoofnagle, U.S. Attorney's Office, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff Nilsa M. Ruiz–Rivera brings this complaint against A.D. Moyer, District Di-

rector of the Immigration and Naturalization Service ("INS") alleging a violation of her due process rights. INS now moves to dismiss the complaint, or, in the alternative, for summary judgment. For the reasons stated below, defendant's motion for summary judgment is granted.[1]

## I. Background [2]

Plaintiff's husband Jesus Antonio Rivera–Aristizabal was admitted to the United States as a permanent resident alien on June 4, 1977. Ten years later, on September 25, 1987, he was convicted in the United States District Court for the District of New Mexico of possessing cocaine with the intent to deliver, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) and 18 U.S.C. § 2. Rivera–Aristizabal was sentenced to a term of seven years incarceration and three years supervised release.

On July 14, 1988, the INS issued an order to show cause and notice of hearing against Rivera–Aristizabal, charging that he was subject to deportation pursuant to 8 U.S.C. § 1251. Although in custody at the Federal Correctional Institution in Sandstone, Minnesota at the time, he was subsequently transferred to the Federal Detention Center in Oakdale, Louisiana. On February 11, 1991, an immigration judge rejected Rivera–Aristizabal's request for waiver of deportation under Section 212(c) of the Immigration and Nationality Act, and ordered him deported from the United States. On that same date, Rivera–Aristizabal appealed this decision and was released from federal custody on a $10,-000 bond posted by plaintiff with INS in Chicago, Illinois. As part of the terms of the bond agreement, plaintiff was required to "cause the said alien to be produced ... to an immigration officer of the United States upon each and every request by such officer...." Defendant's Administrative Record, at 14. Upon his release, Rivera–Aristizabal went to Chicago and remained there until his final deportation.

The Board of Immigration Appeals affirmed the decision of the immigration judge on June 10, 1991, and a letter was issued to plaintiff on June 21, 1991 requiring her to produce Rivera–Aristizabal to the INS in Oakdale on July 15, 1991 at 9:00 a.m. for deportation. Rivera–Aristizabal was also notified in a letter dated of June 24, 1991, to report to the Oakdale INS facility on July 15 for final deportation.

On July 2, 1991, Rivera–Aristizabal filed a notice of appeal to the Seventh Circuit challenging the Board of Immigration Appeals ruling. His counsel sent a letter to the INS in Oakdale notifying the agency of his appeal and informing them that such notification created an automatic stay of deportation. Notice of the appeal was also faxed to the INS Oakdale office on July 10, 1991. An INS officer phoned Rivera–Aristizabal's attorney, and informed him that the agency did not consider his filing of a petition for review to stay the deportation, since Rivera–Aristizabal had been convicted of an "aggravated felony" and that a stay could only be obtained by explicit order from the Court of Appeals. *See* 8 U.S.C. § 1105(a)(3). Rivera–Aristizabal's attorney argued that the "aggravated felony" provision did not apply to his client because it was passed after he was convicted of the narcotic offense. The INS officer informed the attorney of its position that Rivera–Aristizabal was required to appear in Oakdale on July 15 at 9:00 a.m., and that failure to appear would be a breach of his bond agreement.

On July 11, 1991, Rivera–Aristizabal filed an Emergency Motion for Stay of Deportation before the Seventh Circuit, but this motion was denied the following day because it did not include a copy of the order on review and failed to discuss the requirements for obtaining a stay of deportation. On July 15, 1991, Rivera–Aristizabal filed another Emergency Motion before the Court of Appeals. However, the Seventh Circuit denied this

1. Because the parties have treated INS's motion as one for summary judgment, we will do the same.

2. These facts are gleaned from INS's statement of uncontested facts filed pursuant to General Rule 12(M) of the United States District Court for the Northern District of Illinois. Plaintiff has failed to respond to defendant's statement of uncontested facts, thereby admitting them. *See* General Rule 12(N) of the United States District Court for the Northern District of Illinois.

petition because Rivera–Aristizabal did not report to INS at Oakdale until July 16, and was therefore a fugitive and not entitled to any relief.

On July 16, 1991, INS determined that plaintiff Ruiz–Rivera had substantially violated the stipulated conditions of the bond obligation. *See* 8 C.F.R. § 103.6(e). The INS Associate Commissioner of Examinations for the Administrative Appeals Unit dismissed plaintiff's appeal of this decision on October 12, 1993, and denied a motion to reopen the appeal on May 23, 1994. Plaintiff filed the instant lawsuit on July 29, 1994, arguing that because Rivera–Aristizabal's failure to appear was not a substantial violation of the bond conditions, the INS's decision was arbitrary and capricious.

## II. Discussion

A motion for summary judgment will be granted if "there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). This standard places the initial burden on the moving party to identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). Once the moving party has met this burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(c); *see Maxwell v. City of Indianapolis,* 998 F.2d 431, 433 (7th Cir.1993). In deciding a motion for summary judgment, the facts must be read in a light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 254, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Defendant contends that Ruiz–Rivera breached her bond agreement because she failed to present Rivera–Aristizabal to the INS on July 15, 1991 as required. Plaintiff does not dispute any material facts, but rather, asserts that the INS decision to consider her bond breached was unlawful, arbitrary and capricious. Although this INS decision is accorded great deference, *see Udall v.*

*Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), "[a]n administrative interpretation will be given controlling weight only so long as it is not inconsistent with the plain meaning of the regulation or is not clearly erroneous." *Bahramizadeh v. INS,* 717 F.2d 1170, 1173 (7th Cir.1983). We must therefore ascertain whether the INS finding of breach was contrary to the plain meaning of the regulation or clearly erroneous.

Bonds that are posted to ensure the production of aliens upon INS request are "breached when there has been a substantial violation of the stipulated conditions." 8 C.F.R. § 103.6(e). However, where there has been substantial performance of all the conditions of the bond obligation, the obligor will not be held liable. 8 C.F.R. § 103.6(c)(3). The determination of whether a violation was substantial turns on "the extent of the breach, whether it was intentional or accidental on the part of the alien, whether it was in good faith and whether the alien took steps to make amends or to place himself in compliance." *Bahramizadeh,* 717 F.2d at 1173; *International Fidelity Ins. Co. v. Crosland,* 490 F.Supp. 446, 448 (S.D.N.Y.1980).

In the instant case, the bond obligation signed by Ruiz–Rivera specifically required her to produce Rivera–Aristizabal upon each and every request by the INS, and stated that her failure to do so would render the bond obligation immediately due and payable. Plaintiff was ordered to produce Rivera–Aristizabal on July 15, 1991 at 9:00 a.m., and Rivera–Aristizabal himself was aware of this request. Nonetheless, Rivera–Aristizabal failed to appear on that date. Such a violation cannot be deemed trivial, since the primary obligation of the bond agreement was to produce Rivera–Aristizabal whenever requested by the INS. *See International Fidelity Ins. Co. v. INS,* 623 F.Supp. 45, 47 (S.D.N.Y.1985).

Nor was this failure to appear accidental; rather, Rivera–Aristizabal intentionally remained in Chicago past his surrender date in order to determine the status of his emergency motion for a stay before the Seventh Circuit. Plaintiff argues, however, that Riv-

era–Aristizabal's failure to appear was in reliance on a good faith belief that the proscription against an automatic stay for "aggravated felons" did not apply to him because his conviction had occurred prior to the amendment of the deportation stay provisions of 8 U.S.C. § 1105(a)(3). While Rivera–Aristizabal may have honestly believed in the merits of his legal position,[3] this is not the sort of good-faith belief which would justify a direct violation of the bond agreement. For example, in *Bahramizadeh v. INS*, 717 F.2d 1170, 1173–74 (7th Cir.1983), the plaintiff had breached the terms of the bond agreement by remaining in the country after his student visa had expired, but this was because he was told by the INS on three separate occasions that because he had applied for permanent residency he did not need to extend his visa. Similarly, in *Gomez–Granados v. Smith*, 608 F.Supp. 1236, 1238 (D.Utah 1985), the alien in question failed to appear because his attorney had requested a continuance, had asked to be notified should one not be granted, and did not hear from the INS before the hearing date. The court found that "[p]laintiff's breach was made in good faith as he relied on the advice of counsel that he need not produce the alien as the hearing would be continued." *Id.* In the instant case, counsel for both plaintiff and Rivera–Aristizabal had spoken to INS officers and was told that the agency did not consider the filing of a notice of appeal to stay the alien's deportation. Even if plaintiff did rely on Rivera–Aristizabal's retroactivity argument, such reliance was not reasonable because "neither the making of the request [for a stay] nor the failure to receive notice of disposition of the request shall relieve the alien from strict compliance with any outstanding notice to

surrender for deportation." 8 C.F.R. § 243.4 (discussing request of stay before INS administrator). Moreover, Rivera–Aristizabal's emergency motion for stay of deportation was denied by the Seventh Circuit on July 12, 1991, undermining any belief plaintiff may have had about not needing to produce Rivera–Aristizabal.

Finally, we observe that Rivera–Aristizabal did appear at INS in Oakdale on July 16, 1991, only one day late.[4] While this does indicate that he and plaintiff took steps to comply with the order, it is not sufficient to overcome the other factors supporting the INS's ruling. Rather, because plaintiff intentionally failed to produce Rivera–Aristizabal at the designated facility in time, and she was aware that the filing of his appeal did not create an automatic stay, we cannot say that the INS's determination that she substantially breached her bond obligations was either contrary to the regulations or clearly erroneous.[5]

### III. Conclusion

For the reasons stated above, defendant's motion for summary judgement is granted. It is so ordered.

---

3. We note that this argument has been rejected by Congress in Pub.L. No. 102–232, § 306(a)(11)(B), which specifies that aggravated felons are unable to obtain an automatic stay of deportation, regardless of when they were convicted. *See Arthurs v. INS*, 959 F.2d 142, 143 (9th Cir.1992).

4. Plaintiff argues that Rivera–Aristizabal offered to surrender to INS in Chicago, but that this proposal was rejected by defendant. Regardless of the veracity of this assertion, it fails to demonstrate good-faith compliance with the order directing his surrender in Oakdale, Louisiana.

5. Plaintiff also argues that Rivera–Aristizabal's absence was justified because his right to challenge the INS deportation decision would have terminated upon his return to Columbia. While we express no opinion as to the accuracy of this legal position, we note that Rivera–Aristizabal knew of the deportation order as early as June 29, 1991, and only filed his emergency motion for stay of deportation on July 11, 199. His lack of diligence in filing this motion militates against any suggestion that the INS's ruling was inequitable.