**Nilsa M. RUIZ–RIVERA,
Plaintiff–Appellant,**

v.

**A.D. MOYER, District Director,
Immigration and Naturalization
Service, Defendant–Appellee.**

**No. 95–1275.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1995.

Decided Nov. 20, 1995.

Ralph M. Schelly, (argued) Chicago, IL, for Nilsa M. Ruiz–Rivera.

Janet Reno, U.S. Atty. Gen. Office of the United States Attorney General, Washington, DC, Samuel Der–Yeghiayan, Immigration & Naturalization Service, Chicago, IL, James B. Burns, Office of the United States Attorney, Chicago, IL, James G. Hoofnagle, Jr., Asst. U.S. Atty. (argued), Office of the Unit- ed States Attorney Civil Division, Chicago, IL, William J. Howard, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for A.D. Moyer.

Before CUMMINGS, FLAUM and ROVNER, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff, Nilsa M. Ruiz–Rivera, filed suit in district court against A.D. Moyer, District Director of the Immigration and Naturalization Service ("INS"), challenging an INS decision that her immigration bond had been breached. The plaintiff argued that the INS's determination that she forfeited the bond was unlawful, arbitrary, and capricious. The district court granted the defendant's motion for summary judgment and the plaintiff appealed. We now affirm the district court's decision.

I.

The plaintiff's husband, Jesus Antonio Rivera–Aristizabal, became a lawful permanent resident of the United States in 1977. On September 25, 1987, he was convicted in federal court for possession with the intent to distribute cocaine. Rivera–Aristizabal was sentenced to seven years incarceration followed by three years of supervised release.

On February 11, 1991, while Rivera–Aristizabal was in INS custody in Oakdale, Louisiana, an immigration judge ordered him deported pursuant to 8 U.S.C. § 1251(a)(1) based on his 1987 conviction. Rivera–Aristizabal immediately appealed the order of deportation to the Board of Immigration Appeals ("BIA"). On the same day, Nilsa Ruiz–Rivera posted a $10,000 cash immigration bond with the Chicago office of the INS to secure the release of her husband pending his appeal. After his release, Rivera–Aristizabal went to Chicago, where he remained until his deportation.

The delivery bond required Ruiz–Rivera to produce her husband "to an immigration officer of the United States upon each and every request by such officer...." The BIA affirmed the deportation order on June 10, 1991. The Oakdale INS office notified Ruiz–Rivera by certified letter, dated June 21,

**500**

1991, that she was required to produce her husband to the INS in Oakdale, Louisiana at 9:00 a.m. on July 15, 1991 for deportation. The Oakdale INS office similarly notified Rivera–Aristizabal in a June 24, 1991 letter that he needed to report to the Oakdale INS at 9 a.m. on July 15, 1991. Rivera–Aristizabal signed return receipts for both letters on June 29, 1991.

On July 2, 1991, Rivera–Aristizabal filed a petition for review of the BIA's decision in this court. In a letter dated July 5, 1991, his counsel [1] informed the INS office in Oakdale of Rivera–Aristizabal's appeal and claimed that the filing of the petition for review automatically stayed the deportation order. Rivera–Aristizabal's attorney faxed a copy of the petition for review to the Oakdale INS office on July 10, 1991. Upon receipt of the facsimile, an INS officer telephoned Rivera–Aristizabal's counsel and advised him that the petition for review did not create an automatic stay because Rivera–Aristizabal had been convicted of an "aggravated felony." Counsel for Rivera–Aristizabal argued that the "aggravated felony" provision did not apply because it was enacted after his client had been convicted. However, the INS officer replied that unless the Seventh Circuit explicitly ordered a stay of deportation, Rivera–Aristizabal was required to surrender to the INS in Oakdale at 9:00 a.m. on July, 15, 1991. The INS officer informed the attorney that if Rivera–Aristizabal failed to appear, Ruiz–Rivera would breach her bond obligations.

On July 11, 1991, Rivera–Aristizabal filed an emergency motion for a stay of deportation with this court. We denied this motion the next day because it did not include a copy of the order of deportation, nor a discussion of the factors necessary to receive a stay. Rivera–Aristizabal failed to appear in Oakdale on July 15, 1991. Instead, on this date he filed a second emergency motion with this court. We denied the second motion on July 17, 1991 because, by failing to report to Oakdale on July 15, Rivera–Aristizabal be-

came a fugitive and was therefore not entitled to the resources of the court.[2]

On July 16, 1991, the INS declared the bond breached because Rivera–Aristizabal's failure to report to Oakdale on July 15 constituted a "substantial violation" of the bond conditions. Ruiz–Rivera appealed the initial decision to forfeit the bond to the INS Administrative Appeals Unit. On October 12, 1993, the Administrative Appeals Unit found a substantial violation of the conditions of the bond agreement and therefore dismissed Ruiz–Rivera's appeal. The Administrative Appeals Unit subsequently denied Ruiz–Rivera's motion to reopen the decision.

Ruiz–Rivera filed the current lawsuit in district court on July 29, 1994, alleging that the INS's decision to forfeit the bond was unlawful, arbitrary, and capricious. Ruiz–Rivera argued that the INS's determination that the bond was breached was inconsistent with INS regulations, which require a substantial violation of the bond conditions. The district court granted the INS's motion for summary judgment. In its opinion, the district court discussed the factors this court has prescribed for evaluating whether a violation is substantial. *Ruiz–Rivera v. Moyer,* 874 F.Supp. 870, 872 (N.D.Ill.1995). The district court concluded that the INS's determination that the bond was breached was neither contrary to the regulations nor clearly erroneous. *Id.* at 873. On appeal, Ruiz–Rivera once again contends that she substantially complied with the bond conditions. The plaintiff argues that the district court erred by affirming an INS decision that is inconsistent with INS regulations.

## II.

We review the district court's grant of summary judgment *de novo,* drawing all reasonable inferences in favor of the non-moving party. *Smith v. Shawnee Library Sys.,* 60 F.3d 317, 320 (7th Cir.1995). Summary judgment should be granted if the pleadings and supporting documents "show that there is no genuine issue as to any

1. Ruiz–Rivera retained the same counsel for the current action as her husband retained for his deportation proceedings.

2. Rivera–Aristizabal was later deported from the United States to Colombia.

material fact and the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). Where the party opposing a motion for summary judgment bears the burden of proof on an issue, she must go beyond the pleadings and affirmatively demonstrate a genuine issue of material fact for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

■ According to INS regulations, bonds that are posted to ensure the delivery of aliens are "breached when there has been a substantial violation of the stipulated conditions." 8 C.F.R. § 103.6(e) (1995). Thus, "[s]ubstantial performance of all conditions imposed by ... a bond shall release the obligor from liability." 8 C.F.R. § 103.6(c)(3) (1995). The INS determined that the conditions of the delivery bond were substantially violated and therefore declared the bond breached under 8 C.F.R. § 103.6(e). On appeal, the plaintiff does not present a factual dispute. Instead, Ruiz–Rivera argues that the uncontested facts demonstrate that she substantially complied with the bond conditions. In effect, the plaintiff contends that the INS acted unlawfully by interpreting "substantial violation" to encompass the facts of this case.

■ It is well established that "[w]e must give substantial deference to an agency's interpretation of its own regulations." *Thomas Jefferson Univ. v. Shalala,* — U.S. —, —, 114 S.Ct. 2381, 2386, 129 L.Ed.2d 405 (1994). We are bound by an agency's interpretation "unless it is plainly erroneous or inconsistent with the regulation." *Id.; accord Bahramizadeh v. INS,* 717 F.2d 1170, 1173 (7th Cir.1983). Thus, we must determine whether the INS's decision that the bond conditions were substantially violated was plainly erroneous or inconsistent with 8 C.F.R. § 103.6(e). In evaluating whether a bond violation is substantial, we look to four factors:

(1) the extent of the breach;

(2) whether it was intentional or accidental on the part of the alien;

(3) whether it was in good faith; and

(4) whether the alien took steps to make amends or place himself in compliance.

*Bahramizadeh,* 717 F.2d at 1173; *see also International Fidelity Ins. Co. v. Crosland,* 490 F.Supp. 446, 448 (S.D.N.Y.1980). We will examine each of these factors in turn.

The extent of the breach in this case was not trivial. The bond that Ruiz–Rivera posted required her to produce her husband upon each and every request made by the INS. The bond stated that Ruiz–Rivera would forfeit the $10,000 security if she failed to satisfy the conditions of the bond. On June 29, 1991, the plaintiff received a demand to surrender her husband to the Oakdale INS at 9:00 a.m. on July 15, 1991. Rivera–Aristizabal also received notice on June 29 that he was required to report to the Oakdale INS at 9:00 a.m. on July 15. Despite the adequate notice, Rivera–Aristizabal did not surrender to the Oakdale INS until July 16. The primary obligation of the delivery bond required Ruiz–Rivera to produce her husband whenever and wherever requested by the INS, i.e., on July 15 at Oakdale. Thus, although Rivera–Aristizabal may not have greatly breached the bond conditions by reporting to Oakdale one day late, his failure to report on time was not trifling.

Additionally, Rivera–Aristizabal intentionally breached the terms of the bond. Both the plaintiff and Rivera–Aristizabal were aware that Rivera–Aristizabal was required to report to the Oakdale INS at 9:00 a.m. on July 15. The plaintiff has admitted that Rivera–Aristizabal reported late because he chose to remain in Chicago to pursue his emergency motions for a stay. Rivera–Aristizabal willfully decided to remain in Chicago instead of surrendering himself to the INS under the conditions of the bond. Thus, Rivera–Aristizabal's actions do not demonstrate an accidental violation of the bond conditions.

Furthermore, Rivera–Aristizabal did not violate the bond conditions in good faith. The plaintiff argues that Rivera–Aristizabal acted in good faith because he reasonably believed that he was entitled to an automatic stay of deportation upon the filing of a peti-

tion for review with this court.[3] The INS clearly informed counsel for both the plaintiff and Rivera–Aristizabal that Rivera–Aristizabal was not entitled to an automatic stay of deportation. In light of the uncertainty in the law at that time, it may have been reasonable for Rivera–Aristizabal to seek a stay of deportation in this court. However, we denied Rivera–Aristizabal's motion for a stay of deportation on July 12, 1991, a full three days before he was required to report to Oakdale. Although we denied Rivera–Aristizabal's motion on procedural grounds, Rivera–Aristizabal was nonetheless obligated to comply with our decision. Thus, after July 12 Rivera–Aristizabal could no longer rely in good faith on the alleged legal uncertainty of his entitlement to an automatic stay. However, instead of making arrangements to report to Oakdale, Rivera–Aristizabal chose to remain in Chicago past his scheduled surrender time to pursue an additional motion with this court. Rivera–Aristizabal's blatant disregard of our July 12 order denying his stay distinguishes the present case from other cases in which good faith violations have been found. See Bahramizadeh, 717 F.2d at 1173 (finding "suggestion" of good faith where alien remained in the country after the expiration of his student visa but the INS had specifically told him three times that he did not need to extend his visa); Gomez–Granados v. Smith, 608 F.Supp. 1236, 1238 (D.Utah 1985) (finding a good faith violation where the alien's counsel reasonably believed that a continuance had been granted and informed the alien that he was not required to report to a hearing). Because there was no reasonable basis for Rivera–Aristizabal to disregard our July 12 order, his failure to report to the Oakdale INS on July 15 evinces a lack of good faith.

The INS has conceded that Rivera–Aristizabal took steps to place himself in compliance with the conditions of the delivery bond. By surrendering to the Oakdale INS only one day late, Rivera–Aristizabal clearly attempted to rectify his previous violation of the bond.[4]

We are required to uphold the decision of the INS "unless it is plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ., —— U.S. at ——, 114 S.Ct. at 2386. Our role is not to choose among competing interpretations but to ensure that the INS has followed its own regulations. We may well have decided this case differently than the INS had it been before us in the first instance. However, given our evaluation of the Bahramizadeh factors, we cannot say that the INS's determination that the bond violation was substantial was plainly erroneous or inconsistent with 8 C.F.R. § 103.6(e). While our finding that Rivera–

---

3. Prior to 1990, any alien who filed a petition for review in a United States court of appeals was entitled to an automatic stay of deportation. However, the Immigration and Nationality Act was amended in 1990 to deny automatic stays for aliens who had been convicted of an aggravated felony. See 8 U.S.C. § 1105a(a)(3). Rivera–Aristizabal argued that this provision should not have been applied retroactively to prevent him from receiving an automatic stay because of his 1987 conviction. Rivera–Aristizabal relied on case law in support of this position. See Ayala–Chavez v. INS, 945 F.2d 288 (9th Cir.1991). Subsequent to Rivera–Aristizabal's filing of his petition for review, Congress again amended the Immigration and Nationality Act to clearly provide that no aggravated felons can receive an automatic stay, regardless of the date of their conviction. Pub.L. No. 102–232, § 306(a)(11)(B); see Arthurs v. INS, 959 F.2d 142, 143 (9th Cir.1992).

4. The plaintiff argues that he presented himself to the Chicago INS on July 15 and then took the first available flight to Louisiana, which arrived on July 16. It is unclear whether the district court considered these facts, as plaintiff failed to comply with local rules by not responding to the defendant's statement of uncontested facts. See Ruiz–Rivera v. Moyer, 874 F.Supp. 870, 871 n. 2, 873 n. 4 (N.D.Ill.1995). Regardless, these additional facts would not change our analysis. Rivera–Aristizabal's actions after 9 a.m. on July 15 certainly demonstrate that Rivera–Aristizabal took steps to make amends or to place himself in compliance, thereby satisfying the last factor of Bahramizadeh. However, the post-violation acts of Rivera–Aristizabal are irrelevant to the analysis of the remaining three Bahramizadeh factors. The reasons for Rivera–Aristizabal's lateness are immaterial to the objective inquiry regarding the extent of the breach. Moreover, the fact that Rivera–Aristizabal attempted to surrender after his violation does not indicate that the violation was accidental or done in good faith. As we have discussed, the undisputed facts demonstrate that, despite our July 12 order denying his stay request, Rivera–Aristizabal intentionally failed to report to the Oakdale INS as required by the bond.

Aristizabal took steps to comply with the INS order weighs in plaintiff's favor, the fact that Rivera–Aristizabal's failure to report was intentional and lacking good faith clearly militates against the plaintiff's position. Thus, although the plaintiff's complete forfeiture of her $10,000 bond appears to be unnecessarily harsh, given her husband's attempt to remedy a breach of limited extent, we must defer to the INS's interpretation of its own regulation.

We therefore AFFIRM the district court's grant of summary judgment.