**John WINKELMAN, Plaintiff,**

v.

**Steve MAGNE and Brad Sassatelli, Defendants.**

No. 00–3043.

United States District Court,
C.D. Illinois,
Springfield Division.

Oct. 29, 2001.

Mary Lee Leahy, Leahy Law Offices, Springfield, IL, Attorney for Plaintiff.

Matthew D. Bilinsky, Office of Attorney General, Springfield, IL, Jeffrey D. Col-

man, David Jimenez–Ekman, Erin R. Schrantz, Jenner & Block, Chicago, IL, Attorneys for Defendants.

## OPINION

RICHARD MILLS, District Judge.

In order to survive a motion for summary judgment, a plaintiff must do more than invoke general principles of law; he must rely upon relevant law and tender admissible, material evidence which support his claim.

Here, Plaintiff has failed to cite any admissible, relevant evidence in support of his claim; he has failed to cite any applicable case law in support of his claim; and he has failed to distinguish the clear and binding authority relied upon by Defendants in support of their motion for summary judgment.

A better suited case to employ the tool of summary judgment could not be found.

Motion for summary judgment allowed.

## I.  BACKGROUND [1]

The Illinois Department of Corrections ("IDOC") advertised or "posted" the vacancy for a dietary manager position at the Graham Correctional Center in October 1999. IDOC selected four candidates to be interviewed for the position. Two of these candidates were John Winkelman and John Flowers. Steve Magne and Brad Sassatelli were responsible for interviewing the candidates for IDOC.

In individual interviews, Magne and Sassatelli posed the same series of predetermined, job-related questions to each of the four candidates. Magne scored and

---

1. In a separate Order entered October 25, 2001, the Court, pursuant to Defendants' motion, struck Plaintiff's statement of facts viewed in the light most favorable to Plaintiff and deemed admitted Defendants' statement of undisputed facts based upon Plaintiff's failure to comply with Local Rule 7.1(D)(2). Accordingly, the background section of this Order is based upon Defendants' statement of undisputed facts.

ranked the candidates based solely on their answers to these predetermined questions. Sassatelli scored and ranked the candidates based upon the candidates' answers to the predetermined questions, their applications and resumes if submitted, and his prior eight years of experience at the Graham Correctional Center.

After his interview, Flowers received a score of 3.4 from Magne and Sassatelli. After his interview, Winkelman received a score of 3.35. Because Flowers received the highest score of the four candidates, Magne and Sassatelli recommended to their superiors that Flowers be appointed to the position of dietary manager position at the Graham Correctional Center. Based upon Magne and Sassatelli's recommendations, IDOC appointed Flowers to be the dietary manager at the Graham Correctional Center effective January 1, 2000.

On February 14, 2000, Winkelman filed the above-captioned case, pursuant to 42 U.S.C. § 1983, alleging that Magne and Sassatelli violated his First Amendment rights by failing to award him the dietary manager position at Graham Correctional Center. Specifically, Winkelman alleges that Magne and Sassatelli filled the position on the basis of political affiliation and that, had Magne and Sassatelli awarded the position based upon merit, he would have received the position because he is more qualified for the position than Flowers is. Magne and Sassatelli have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affida-

vits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer,* 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

After reviewing the parties' submissions on the matter of summary judgment, the Court is in a quandary as to how and why it is, exactly, that Winkelman expects the Court *not* to grant summary judgment in Magne and Sassatelli's favor. Evidently, Winkelman and/or his counsel believe that all a would-be plaintiff who is attempting to state a cause of action based upon political affiliation discrimination needs to do in order to have his case proceed before a jury is to cite *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), make wholly unsubstan-

tiated and irrelevant claims, and label those claims as "circumstantial evidence." However, Winkelman is clearly incorrect as this is not the state of the law. The Court provided Winkelman ample opportunity to prove his claim during the discovery period, but because he has failed to do so, the Court will enter summary judgment in Magne and Sassatelli's favor.

As the United States Court of Appeals for the Seventh Circuit has explained:

> In order to establish a *prima facie* case of politically motivated discharge, [a plaintiff] must "prove by a preponderance of the evidence that his conduct was constitutionally protected, and that the protected conduct was a substantial factor in the decision to terminate him." *Garrett v. Barnes*, 961 F.2d 629, 632 (7th Cir.1992). As we have noted, "[t]hat burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981), *certiorari denied*, 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139. If [a plaintiff] is able to demonstrate that his political affiliation was a motivating factor in his termination, the burden then shifts to defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for terminating him in order to avoid liability. *Garrett*, 961 F.2d at 632.

*Nelms v. Modisett*, 153 F.3d 815, 818 (7th Cir.1998)(footnote omitted); *see Tarpley v. Jeffers*, 96 F.3d 921, 928 (7th Cir.1996), quoting *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)(holding that "the employee must first prove by a preponderance of the evidence that political affiliation was a 'motivating factor' in the employment decision. If the employee carries that burden, the employer then bears the burden of showing that 'it would have reached the same decision as to respondent's [ ]employment even in the absence of the protected conduct.' ").

■ In the instant case, Winkelman has failed to tender *any* evidence, let alone evidence sufficient to show by a preponderance, that he was not awarded the position as a dietary manager at Graham Correctional Center because of his political affiliation or because of his lack of a political affiliation. In fact, the undisputed evidence establishes just the opposite. Politics, political affiliation, political beliefs, political activities, political recommendations, and political support were never mentioned or discussed at any time during the interview process. In fact, Winkelman attested to this fact during his deposition.

■ Furthermore, the undisputed evidence reveals that at no point during the interview, evaluation, and/or selection process did Magne or Sassatelli know the political affiliation, beliefs, activities, recommendations, or support of either Winkelman or Flowers. Although Sassatelli knew that Winkelman had run for political office as a Republican, at no point in the interview, evaluation, and selection process did he know of Winkelman's political recommendation or support for the position. In any event, at no point in the interview, evaluation, and selection process did Magne and/or Sassatelli: (1) consider the political affiliation, beliefs, activities, recommendations, or support of Winkelman or Flowers; (2) receive any direction or communication from anyone at IDOC or the Graham Correctional Center specifying that they should recommend a particular person for the position; (3) have any communication with any political official concerning the appointment; or (4) know

of any letters of recommendation or referral in support of any candidate for the position. The law is clear that, if a defendant does not know of a plaintiff's political affiliation (or lack thereof), he cannot be held liable for violating that plaintiff's First Amendment rights for basing an employment decision upon the plaintiff's political affiliation. *See Cusson–Cobb v. O'Lessker,* 953 F.2d 1079, 1080 (7th Cir.1992)(holding that, because the defendant did not know that the plaintiff was a Republican, he could not have fired her because she was a Republican and, thus, the plaintiff failed to establish that her political affiliation was a motivating factor in her discharge).

■ Winkelman's invocation of the general principles of law governing employment discrimination cases and a district court's duty in considering a motion for summary judgment are insufficient to preclude the Court from entering summary judgment against him. Initially, the Court notes that the Seventh Circuit has held that "[f]acts suggesting that a qualified person of one type was fired, and a person of another type was hired make out a *prima facie* case of race or sex discrimination, but they do not suffice to show discrimination based on political association." *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992); *see Nelms,* 153 F.3d at 818 n. 4 (same). Tellingly, other than *Rutan,* Winkelman has failed to cite any authority which involved a claim of discrimination based upon political affiliation. Thus, although Winkelman would like for this Court to apply the *McDonnell Douglas* and other standards governing employment discrimination based upon race, gender, and pregnancy, it would be an improper application of the law for this Court to do so.

In addition, the fact that Winkelman may have been more qualified for the di-etary manager position than Flowers is inapposite. Again, the Seventh Circuit has clearly held that "[w]hatever may be the case under labor and civil rights statutes, *Mt. Healthy* establishes the approach for litigation under the first amendment." *Gooden v. Neal,* 17 F.3d 925, 928 (7th Cir.1994). Without proffering some evidence that his political affiliation was a substantial or motivating factor, Winkelman's qualifications as compared with the other candidate's are irrelevant.

■ Likewise, Winkelman's reliance upon the fact that Flowers received a letter of recommendation from State Senator Frank C. Watson and the fact that he did not does little to advance his position because it is clear that politicians have a First Amendment right to send recommendations for employment. *Tarpley v. Keistler,* 188 F.3d 788, 793–95 (7th Cir.1999); *Vickery v. Jones,* 100 F.3d 1334, 1344–45 (7th Cir.1996). As the Seventh Circuit has explained:

> Government hiring on the basis of political affiliation is one thing; *Rutan* and other cases embrace the First Amendment right of political association and accordingly limit this practice. Recommending that the government hire someone (of, perhaps, the same political affiliation) is altogether different because the act of recommending implicates another First Amendment right—the right to petition.

*Tarpley,* 188 F.3d at 795.

Here, Winkelman has presented no evidence that Senator Watson did anything other than exercise his First Amendment right. More specifically, Winkelman has presented no evidence that Magne and Sassatelli considered or were even aware of Senator Watson's recommendation letter when they made their recommendations that Flowers should be awarded the position.

Finally, Winkelman's allegation of preselection, his allegation of a scheme, conspiracy, or system of political affiliation discrimination in the State of Illinois, and his allegation on irregularities in interview scoring do not preclude the entrance of summary judgment against him. All of the "circumstantial evidence" cited to and relied upon by Winkelman in support of his allegations are based upon inadmissible hearsay and, therefore, cannot be considered by the Court. *Hong v. Children's Mem. Hosp.*, 993 F.2d 1257, 1265 (7th Cir. 1993). · As for the scoring irregularities, the First Amendment does not require IDOC to follow any particular set of personnel procedures in awarding employment positions. *Rutan,* 497 U.S. at 80–81, 110 S.Ct. 2729 (Stevens, J., concurring); *Bishop v. Wood,* 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). More importantly, nothing in any of these allegations creates a genuine issue of material fact as to whether Winkelman's political affiliation or lack thereof was a substantial or motivating factor in Magne and Sassatelli's decision not to recommend him for the dietary manager position at the Graham Correctional Center.

In short, although Winkelman bemoans the state of the law in this circuit regarding what a would-be plaintiff must show in order to state a cause of action for political affiliation discrimination under *Rutan,* and despite his lament that, unless the Court adopts his argument no would-be plaintiff will ever be able to establish a cause of action for political affiliation discrimination without a confession by the defendant, the law cited *supra* and relied upon by the Court is the law which this Court is bound to follow. The Court is not inclined to reject or to turn a blind eye on well established law merely upon the say so of one plaintiff and his counsel as to what the state of the law should be.

Accordingly, the Court finds that Winkelman has failed to tender any evidence that his political affiliation or lack thereof was a substantial or motivating factor in Magne and Sassatelli's recommendations that John Flowers, rather than he, be awarded the position of dietary manager at the Graham Correctional Center. Moreover, the Court finds that there are no genuine issues of material fact to be determined by a finder of fact and that Magne and Sassatelli are entitled to judgment as a matter of law.

*Ergo,* Defendants' Motion for Summary Judgment is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendants and against Plaintiff.