Charles G. COFFEY, Plaintiff,

v.

James C. COX, Joseph Galassi, James Simmons, and Michael Stang, Defendants.

No. 01–3077.

United States District Court, C.D. Illinois, Springfield Division.

Aug. 20, 2002.

Mary Lee Leahy Leahy, Law Offices, Springfield, IL, for Plaintiff.

Jeffrey D. Colman, David Jimenez–Ekman, Maaike S. Hudson, Jenner & Block, Chicago, IL, for defendants.

## *OPINION*

RICHARD MILLS, District Judge.

Different parties.

But, the same claim.

And, the same lack of evidence.

So, the same result.

Summary judgment is granted as to all Defendants.

## I. BACKGROUND

In December 1998, two stationary engineer positions became available in the power plant at the Illinois Department of Corrections' ("IDOC") Logan Correctional Center in Lincoln, Illinois. Announcements for these two vacant stationary engineer positions were posted that same month. Plaintiff Charles Coffey, Edward Jankauski, Jeffrey Short, and several other candidates applied for these positions and were interviewed by IDOC employees in early 1999. However, no candidates were ever hired as a result of these interviews.

On June 1, 1999, Defendant James Cox became the Warden of the Logan Correctional Center. In August 1999, Defendant Michael Stang[1] and Warden Cox learned that the two stationary engineer positions were still vacant, and they agreed that the positions should be filled quickly for economic reasons.

Accordingly, Warden Cox directed his personnel office to post a position-opening announcement describing the two stationary engineer positions and listing them as being available. This announcement was posted later that same month. Eleven candidates applied for the positions, including Coffey, Short, and Jankauski.

Warden Cox selected Defendants Joseph Galassi and James Simmons to interview the candidates for the stationary engineer positions because he knew that both of them had been trained as to the meaning and requirements of the United States Supreme Court's decision in *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990), and because he knew that both of them had previously conducted interviews for IDOC.[2] Galassi and Simmons were provided with copies of a pre-existing interview questionnaire which contained questions to be asked during the stationary engineer interviews. Neither Galassi nor Simmons received any recommendations, political or otherwise, on behalf of any of the applicants for the stationary engineer positions, nor did they learn of any such recommendations.[3]

---

1. At that time, Stang worked in the Office of the Director of IDOC.

2. None of Defendants in this case were involved in the interview process for the vacant stationary engineer positions which were conducted in early 1999.

3. In his response to Defendants' motion for summary judgment, Coffey has failed to respond to paragraphs 10, 14, 15, and 23 of Defendants' statement of undisputed facts. As such, the Court will deem the facts contained within those paragraphs to have been admitted by Coffey. *See* CDIL–LR 7.1(D)(2)(providing that "[a] failure to respond shall be deemed an admission of the motion."); *see also Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 923 (7th Cir.1994)(holding that "there is nothing improper in the court enforcing the rule strictly ...."); *see also Little v. Cox's Supermarkets,*

71 F.3d 637, 641(7th Cir.1995) (noting that "[t]his court has repeatedly recognized the importance and usefulness of this and similar local rules throughout the circuit, as well as 'the exacting obligation these rules impose on a party contesting summary judgment.' "); *see also O'Regan v. Arbitration Forums, Inc.,* 246 F.3d 975, 987 (7th Cir.2001)(holding "that the district court did not abuse its discretion because Rules 12(M) and (N) apply to statements of material facts, and O'Regan has not identified for this court any specific facts contained in her 220–paragraph response that are material to her case. By not identifying any material facts to this court that would have required the denial of summary judgment, any claimed error in the denial of the motion to strike is harmless...."). While Coffey is correct that, in ruling upon Defendants' motion for summary judgment, the Court must view the record as a whole and must draw all reasonable inferences in his

All eleven applicants were scheduled to be interviewed on September 1, 1999.[4] During the interviews, Galassi and Simmons asked each applicant an identical set of questions from the pre-existing interview questionnaire relating to the candidates' experience and qualifications for the stationary engineer positions. Paul Givens, who at the time was the chief engineer responsible for supervising all of the power plant employees at the Logan Correctional Center, attended some of the interviews and assisted Galassi and Simmons by advising them regarding the appropriate answers to certain technical questions on the questionnaire. However, Givens did not score the candidates' answers or assist in any way with the ranking of the candidates. In addition, none of the candidates were questioned about politics, political support, political affiliation, or political activities at any time during the application or interview process.

Sometime during the first week of September 1999, Tami Williams, Logan Correctional Center's human resource coordinator, calculated a weighted score for each applicant by applying a prescribed formula to the combined scores assigned by Galassi and Simmons. The scores and comments regarding each candidate were recorded on a "Candidate Evaluation Form." The top five candidates scored as follows: (1) Jeffrey Short: 16.9; (2) Edward Jankauski: 13.95; (3) Jackie Hurley: 12; (4)(tied) David Fleshman: 9.3; and (5)(tied) Charles Coffey: 9.3.

Thereafter, Warden Cox contacted Stang and recommended Short and Jankauski for the stationary engineer positions. Stang accepted Warden Cox's recommendations, and Short and Jankauski were offered the positions. Warden Cox then informed the other candidates by letter that they had not been selected for the positions.

On March 2, 2001, Coffey filed the above-captioned case, pursuant to 42 U.S.C. § 1983, alleging that Warden Cox, Galassi, and Simmons violated his First Amendment rights by failing to award him one of the stationary engineer positions at the Logan Correctional Center. Specifically, Coffey alleges that Warden Cox, Galassi, and Simmons filled the positions on the basis of political considerations in violation of his First and Fourteenth Amendment rights and the United States Supreme Court's holding in *Rutan*. On September 7, 2002, Coffey amended his Complaint to add identical allegations against Stang. Defendants have now moved for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).

## II. STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c); *see Ruiz–Rivera v. Moyer*, 70 F.3d 498, 500–01 (7th Cir.1995). The moving party has the burden of providing proper documentary evidence to show the absence of a

favor, it is his responsibility to point the Court to where exactly in the record a genuine issue of material fact exists which would preclude the Court from entering summary judgment. *See United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991)(noting that "[j]udges are not like pigs, hunting for truffles buried in briefs."). The Local Rules require nothing

more than this, and therefore, they are not in violation of the Supreme Court's holding in *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

4. However, two applicants did not appear for their scheduled interviews.

genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In determining whether a genuine issue of material fact exists, the Court must consider the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.,* 112 F.3d 291, 294 (7th Cir.1997).

## III. ANALYSIS

The facts in this case are strikingly similar to the facts set forth in a published Opinion from this Court, *Winkelman v. Magne,* 173 F.Supp.2d 821 (C.D.Ill.2001), and the facts in an unpublished order from the United States District Court for the Southern District of Illinois. *Wilkie v. Obourn,* 2002 WL 338401 (S.D.Ill. Jan.7, 2002)(Gilbert, J.). In essence, the plaintiffs in all three cases are not awarded a position within IDOC for which they have applied, and so, they run to the nearest federal courthouse to file a *Rutan* action alleging that impermissible political patronage was afoot. Although they cannot produce any direct evidence of discriminatory intent (more on that later), these plaintiffs purport to rely upon "circumstantial evidence" of a First Amendment

violation, and they ask the court to disregard settled law establishing the framework for interpreting First Amendment claims and to apply, instead, the framework applicable to Title VII cases because it is so closely analogous to their claims.[5]

In the instant case, Coffey argues that, if the Court accepts Defendants' position, the only way in which a would-be plaintiff attempting to maintain a *Rutan* claim can survive summary judgment is to produce direct evidence of discriminatory intent by the defendant, *i.e.,* a confession by a defendant. Coffey asserts that a *Rutan* plaintiff may prove his case by circumstantial evidence and also asserts that the circumstantial evidence of Defendants' discriminatory intent which he has tendered is sufficient to preclude the Court from entering summary judgment against him. Finally, Coffey suggests to the Court that it should apply the *McDonnell Douglas* burden-shifting analysis to his First Amendment claim.

Coffey's "circumstantial evidence" takes two forms. *First,* Coffey asserts that Short did not meet the specified job requirements to qualify for the stationary engineer position. Specifically, Coffey claims that Short did not have four years experience working with high pressure boilers. Because Short was not qualified for the position and because Short was certainly not as qualified as he was, Coffey contends that a reasonable jury could conclude that political considerations affected the hiring process.[6]

*Second,* Coffey contends that the manner in which Defendants filled the stationary engineer positions is suspicious and raises an inference that political affiliations and activities were considered during the hiring process. Specifically, Coffey claims:

---

**5.** Plaintiff's counsel also represented the plaintiffs in *Winkelman* and *Wilkie.*

**6.** In his response to Defendants' motion for summary judgment, Coffey admits that Jankauski should have received one of the two stationary engineer positions.

(1) although the Logan Correctional Center maintained a long established tradition of hiring the most senior boil washer (assuming he wanted the job) to fill vacant stationary engineer positions, the policy was not followed in this case; (2) the first time that the stationary engineer positions were posted in early 1999, the Assistant Warden of Logan Correctional Center—Dan Sexton—received pressure from then Warden Bosse to hire someone with political connections; (3)the fact that Givens was not present during Short's second interview and, thus, could not provide insight into the correctness of Short's answers to technical questions, lends credence to his claim; (4) the fact that Galassi and Simmons did not immediately score the interviews but waited a few days thereafter raises an inference that the two compared results; (5) the e-mail message from Warden Cox to Stang requesting "direction" could lead a jury to conclude that he was asking Stang who should get the job; and (6) the fact that Galassi and Simmons gave inconsistent scores/grades for the same answers to the interview questions raises an inference of discriminatory intent, especially because they did so in Short's favor. Coffey argues that, based upon this circumstantial evidence, a reasonable jury could find that he did not receive one of the stationary engineer positions at the Logan Correctional Center because of his political connections, affiliations, and/or activities (or lack thereof), and therefore, the Court should deny Defendants' motion for summary judgment.

■ Initially, the Court notes that it is unsure as to why Coffey's counsel continues to implore this Court and other district courts to apply the *McDonnell Douglas* test in situations such as this, knowing full well that it would be improper for the courts to do so. *See Winkelman,* 173 F.Supp.2d at 825; *see also Wilkie,* 2002 WL 338401 at *5; *see also Deheve v. Price,* 189 F.Supp.2d 830, 834 n. 5 (C.D.Ill.2002).[7] The Court is even more troubled by Coffey's counsel's assertion that her response applies "applicable law." The United States Court of Appeals for the Seventh Circuit has unmistakably held that "[f]acts suggesting that a qualified person of one type was fired, and a person of another type was hired make out a *prima facie* case of race or sex discrimination, but they do not suffice to show discrimination based on political association." *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992); *see Nelms v. Modisett,* 153 F.3d 815, 818 n. 4 (7th Cir.1998) (same). "Whatever may be the case under labor and civil rights statutes, *Mt. Healthy* establishes the approach for litigation under the first amendment." *Gooden v. Neal,* 17 F.3d 925, 928 (7th Cir.1994).

Coffey's counsel does not even attempt to distinguish *Nelms, Garrett,* and/or *Gooden* factually or legally, nor has she cited any cases which are contrary to the holdings in those cases. Moreover, although counsel may always argue for a change in the law, Coffey's counsel does not attempt to make such an argument other than to say that there is no justification for a distinction between the manner in which First Amendment patronage claims are analyzed versus Title VII race, gender, etc. claims are analyzed.[8] *See A.O. Smith Corp. v. Lewis, Overbeck & Furman,* 979

---

**7.** Plaintiff's counsel also represented the plaintiff in *Deheve.*

**8.** Actually, Coffey's counsel says that there is no justifiable reason to distinguish between the First and Fourteenth Amendments even though *McDonnell Douglas* applies to Title VII cases, not to the Fourteenth Amendment. *Kamberos v. GTE Automatic Elec., Inc.,* 603 F.2d 598, 601 (7th Cir.1979)(noting that "[t]he appropriate legal standard outlining the burden of proof which a Title VII plaintiff must meet was established by the Supreme Court in *McDonnel Douglas* ....")

F.2d 546, 551 (7th Cir.1992)(holding that "[w]hatever the failings of *Sandburg Village,* attorneys in this Circuit are bound by all the decisions of this Court, not just those they deem consonant with Supreme Court doctrine. The correct remedy in such circumstances is to petition for certiorari, or to argue in good faith for a change in the law—but the remedy is not simply to ignore the precedent.").

But to say that there should be no distinction between the analysis under the First and Fourteenth Amendments is really not an argument for a change in the law. Title VII, as an Act of Congress, provides for a private cause of action, and the Supreme Court has held that a would-be plaintiff may employ the burden shifting method established by that court in *McDonnell Douglas* to prove his *prima facie* case. 42 U.S.C. § 2000e *et seq.; see Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881, 889 (7th Cir.1996)(noting that "the private right of action remains an essential means of obtaining judicial enforcement of Title VII."). On the other hand, in order to bring a *Rutan* patronage claim under the First Amendment, a due process claim under the Fourteenth Amendment, or an equal protection claim under the Fourteenth Amendment, a would-be plaintiff must use the statutory mechanism of 42 U.S.C. § 1983. *See Tarpley v. Keistler,* 188 F.3d 788, 797 (7th Cir.1999)(noting that "[t]o state a § 1983 claim based on a Fourteenth Amendment violation—as here, where Tarpley claims that Keistler violated his First Amendment rights as applied to the states through the Fourteenth Amendment—the challenged conduct must also constitute state action."); *see also Schroeder v. Hamilton Sch. Dist.,* 282 F.3d 946, 951 (7th Cir.2002) (holding that " § 1983 does not provide a remedy for rights created under Title VII."). The two statutes address different Congressional concerns and, as such, are analyzed distinctly by the federal courts.

Thus, the Court will not analyze Coffey's case under the *McDonnell Douglas* burden—shifting framework; rather, the Court will follow binding precedent from the Seventh Circuit and will apply the *Mt. Healthy* test to Coffey's claim. As the Seventh Circuit has explained:

> In order to establish a *prima facie* case of politically motivated discharge, [a plaintiff] must "prove by a preponderance of the evidence that his conduct was constitutionally protected, and that the protected conduct was a substantial factor in the decision to terminate him." *Garrett v. Barnes,* 961 F.2d 629, 632 (7th Cir.1992). As we have noted, "[t]hat burden is not insignificant. A disgruntled employee fired for legitimate reasons would not be able to satisfy his burden merely by showing that he carried the political card of the opposition party or that he favored the defendant's opponent in the election." *Nekolny v. Painter,* 653 F.2d 1164, 1168 (7th Cir. 1981), *certiorari denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139. If [a plaintiff] is able to demonstrate that his political affiliation was a motivating factor in his termination, the burden then shifts to defendants to prove by a preponderance of the evidence that they had a legitimate, non-political reason for terminating him in order to avoid liability. *Garrett,* 961 F.2d at 632.

*Nelms v. Modisett,* 153 F.3d 815, 818 (7th Cir.1998)(footnote omitted); *see Tarpley v. Jeffers,* 96 F.3d 921, 928 (7th Cir.1996), *quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)(holding that "the employee must first prove by a preponderance of the evidence that political affiliation was a 'motivating factor' in the employment decision. If the employee carries that burden, the employer then bears the burden of showing that 'it would

have reached the same decision as to respondent's [ ]employment even in the absence of the protected conduct.' ").

In the present case, Coffey has failed to tender any evidence that his political affiliations, activities, and/or associations (or lack thereof) were a substantial or a motivating factor in Defendants' decision not to offer him one of the stationary engineer positions at the Logan Correctional Center. Contrary to Coffey's assertions otherwise, the Court is not requiring him or any *Rutan* plaintiff to offer direct evidence, or more to the point a confession by Defendants, in order to survive summary judgment. Although such direct evidence would certainly result in the denial of a motion for summary judgment, proffering circumstantial evidence can also lead to this result.

"However, the circumstantial evidence must do more than simply 'raise some eyebrows'; it must be sufficient to raise a jury question about the role of the political factors." *Wilkie*, 2002 WL 338401 at * 7, *citing Tarpley*, 96 F.3d at 930. Coffey's circumstantial evidence fails to do little more than raise a single eyebrow.

The fact that Short may not have been qualified or as qualified for the stationary engineer position as Coffey was, without more, is insufficient to create a genuine issue of material fact precluding summary judgment. "In political patronage cases, the defendant [sic-plaintiff] must show as part of his *prima facie* case a causal connection between his political association or activities and the hiring decision; simply proving that he was qualified, or more qualified than others, for the

job without some nexus with his political activities is not enough." *Wilkie*, 2002 WL 338401 at * 5, *citing Garrett*, 961 F.2d at 633. "The law is clear that, if a defendant does not know of a plaintiff's political affiliation (or lack thereof), he cannot be held liable for violating that plaintiff's First Amendment rights for basing an employment decision upon the plaintiff's political affiliation." *Winkelman*, 173 F.Supp.2d at 825; *see Cusson–Cobb v. O'Lessker*, 953 F.2d 1079, 1080 (7th Cir.1992) (holding that, because the defendant did not know that the plaintiff was a Republican, he could not have fired her because she was a Republican and, thus, the plaintiff failed to establish that her political affiliation was a motivating factor in her discharge); *see also Wilkie*, 2002 WL 338401 at *5 (noting that "[e]ssential to such a showing is evidence that the defendants knew of the plaintiff's political association or activities; a defendant cannot base a decision on information he does not know.").

Here, Coffey has failed to tender any evidence of a nexus between politics and his failure to be hired as a stationary engineer. The undisputed facts reveal that no candidate was ever asked about politics, political support, or political affiliations during his interview. In addition, neither Galassi nor Simmons knew of Coffey, Short, or Jankauski's political beliefs, affiliations, or associations. Likewise, although Warden Cox knew that Short had held an office in the Logan County Republican Party, he did not otherwise know of his political persuasion. Finally, although Stang recalled receiving some political recommendations [9] on behalf of some of the

---

9. The fact that Stang received some political recommendations on behalf of some of the candidates does not mean that Coffey has established a *prima facie* case under *Rutan* because politicians have a First Amendment right to send recommendations for employment. *See Tarpley*, 188 F.3d at 793–95(hold-

ing that "[g]overnment hiring on the basis of political affiliation is one thing; *Rutan* and other cases embrace the First Amendment right of political association and accordingly limit this practice. Recommending that the government hire someone (of, perhaps, the same political affiliation) is altogether differ-

candidates, he did not inform Galassi, Simmons, or Warden Cox of those recommendations, and he did not otherwise know of Coffey, Short, or Jankauski's political leanings.[10]

Furthermore, the manner in which the interviews occurred and the positions were awarded does not raise a reasonable inference that the positions were awarded based upon political considerations. "[T]he First Amendment does not require IDOC to follow any particular set of personnel procedures in awarding employment positions." *Winkelman*, 173 F.Supp.2d at 826, *citing Rutan*, 497 U.S. at 80–81, 110 S.Ct. 2729 (Stevens, J., concurring) and *Bishop v. Wood*, 426 U.S. 341, 349–50, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976). Moreover, Coffey has offered no evidence that the time honored tradition of promoting the most senior boil washer to fill a vacant stationary engineer position was an official policy or procedure of IDOC or the Logan Correctional Center. *Id.* Accordingly, the Court finds that Coffey has failed to establish a *prima facie* case that Defendants' decision not to hire him for one of the vacant stationary engineer positions at the Logan Correction Center was politically motivated, and thus, Defendants are entitled to summary judgment on his claim.

However, even if the Court were to find that Coffey's "circumstantial evidence" satisfied his *prima facie* case, Defendants would, nevertheless, be entitled to summary judgment. As the Court noted *supra*, if a plaintiff satisfies his *prima facie* case, the burden shifts to the defendant to prove by a preponderance of the evidence that he had a legitimate, non-political reason for the employment decision. *Nelms*, 153 F.3d at 818; *Garrett*, 961 F.2d at 632.

Here, Defendants have offered un-rebutted evidence that each applicant for the vacant stationary engineer positions were asked an identical set of questions from a pre-existing interview questionnaire relating to the candidates' experience and qualifications for the position. The scoring results of the interviews ranked the candidates as follows: (1) Short; (2) Jankauski; (3) Hurley; and tied for (4) Fleshman and Coffey. Thus, Defendants have established by a preponderance of the evidence that, even if Short had not received one of the positions, Coffey would still not have been offered the job because Hurley ranked higher than he did. *See Tarpley*, 96 F.3d at 929 (holding that "[e]ven if the interview process was biased in Blessing's favor, four other applicants for the position received higher scores than Tarpley's and, thus, would presumably have been preferred to Tarpley, even if Blessing had not been in the running for the position. Tarpley has provided us with no information about these candidates which could support a jury finding that their scores were unjustified by their qualifications or that they were favored over Tarpley for political reasons.")(footnotes omitted).

In addition, even if the Court were to accept the fact that the seniority

---

ent because the act of recommending implicates another First Amendment right—the right to petition."); *see also Vickery v. Jones*, 100 F.3d 1334, 1344–45 (7th Cir.1996)(same).

10. Coffey argues that a jury could conclude, based upon Sexton's testimony, that facts set forth in this paragraph are untrue and that the real reason he was not hired was due to political factors. However, Sexton gave this testimony in an unrelated case to which Defendants were not parties. As such, Sexton's deposition testimony is inadmissible under Rule 32(a) and cannot be considered on summary judgment. *See Northwestern Nat'l Ins. Co. v. Baltes*, 15 F.3d 660, (7th Cir.1994) (noting that a deposition from another case may only be used if the other actions were between the same parties or their representatives or successors in interest).

system (*i.e.*, the most senior boil washer moving up to fill any vacant stationary engineer positions) should have been followed by Defendants in filling the stationary engineer positions, Coffey would still not have been awarded one of the positions. In his response to Defendants' motion for summary judgment, Coffey admits that, under the "old system," Jankauski would have received one of the vacant positions. However, Coffey also admits that Hurley was the second most senior boil washer. Thus, even under the hiring system cited by Coffey, he would not have been awarded one of the jobs.[11] *Id.* Accordingly, the Court finds that Defendants are entitled to summary judgment because they have satisfied their burden under *Mt. Healthy.*[12]

*Ergo*, Defendants' Motion for Summary Judgment is ALLOWED. Accordingly, summary judgment is hereby entered in favor of Defendants and against Plaintiff.

---

**11.** Givens testified that Hurley was the second most senior boil washer. Although he testified that he could not remember whether Hurley applied for the position, Hurley clearly did so as evidenced by his interview questionnaire, his ranking, and his candidate evaluation form.

**12.** In addition to suing Defendants in their individual capacities, Coffey has also sued them in their official capacities. However, to the extent that Coffey seeks money damages from them in their official capacities, his claim is barred by the Eleventh Amendment. *See Scott v. O'Grady*, 975 F.2d 366, 369 (7th Cir.1992)(finding that "an official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver by the state or a congressional override."). To the extent that Coffey seeks an injunction or declaratory judgment awarding him the position of stationary engineer, his official capacity claim fails for the same reason that his individual capacity claim fails.