**HOME BOX OFFICE, INC.; Comcast Cable Investors, Inc., Comcast Cable Investors, L.P., d/b/a Comcast Cablevision of Corinth; ESPN, Inc.; and Showtime/the Movie Channel, Inc., Plaintiffs,**

v.

**CORINTH MOTEL, INCORPORATED, d/b/a Holiday Inn, Defendant.**

No. EC85–360–NB–D.

United States District Court,
N.D. Mississippi, E.D.

Oct. 23, 1986.

Terry S. Bienstock, Philip J. Kantor, Frates, Bienstock & Sheehe, Miami, Fla., W. Reed Hillen, III, Tupelo, Miss., for plaintiffs.

Bobby R. Wood, Corinth, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

In the instant action the plaintiffs, Home Box Office, Inc. ("HBO"), Comcast Cable Investors, Inc., Comcast Cable Investors, L.P., d/b/a Comcast Cablevision of Corinth (collectively referred to as "Comcast"), ESPN, Inc. ("ESPN") and Showtime/The Movie Channel, Inc. ("Showtime"), seek to enjoin the defendant, Corinth Motel Incorporated, d/b/a Holiday Inn ("Motel") from the alleged unauthorized and willful interception, reception, exhibition and public performance of copyrighted and otherwise protected satellite-delivered audiovisual programming through the use of a satellite dish antenna at its motel, and also seek judgment for damages, attorney fees and costs. The bases for relief are the Federal Communications Act of 1934, 47 U.S.C. § 605; the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.;* the Lanham Act, 15 U.S.C. §§ 1051–1125; and Mississippi common law. Before the court at this time is plaintiffs' motion for summary judgment on liability and for a permanent injunction against the defendant. Plaintiffs do not seek summary judgment on their claims premised on Mississippi common law. Plaintiffs, as the movants herein, may prevail on summary judgment only when the court finds that the pleadings, answers to

interrogatories, admissions, depositions and affidavits on file demonstrate that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Upon review of the evidence and consideration of the arguments submitted by the parties hereto, the court is now in a position to enter its findings of fact and conclusions of law.

## FINDINGS OF FACT

Plaintiff ESPN produces a private pay television entertainment service consisting primarily of sports programming, featuring amateur and professional events. HBO produces private, commercial-free pay television entertainment services called "Home Box Office" and "Cinemax," consisting of movies, special events and sports programming, some of which, as with ESPN, it copyrights under the federal copyright laws. Showtime as well produces private commercial-free pay television entertainment services under the names "Showtime" and "The Movie Channel," consisting of movies and special events. (Hereinafter, these plaintiffs shall be collectively referred to as "the entertainment programming services".)

Plaintiff, Comcast, owns and operates cable television systems and is engaged in the business of acquiring exhibition and performance rights to programming for distribution to its cable television systems, subscribers and authorized satellite antenna users. Comcast pays the originators of the programming, that is, the entertainment programming services, for such exhibition and performance rights. Comcast is an authorized distributor of such television programming to customers through its local cable television systems in its franchised service areas.

The entertainment programming services acquire distribution and public display rights for motion pictures, sports events, and other audiovisual works from authors, producers, event organizers or distributors, and distribute such works in a programmed format. Each programming service distributes it programming to operators by transmitting its signals to a satellite. The entertainment programming services contract with subscription television operators, such as Comcast, to distribute their programming by means of either cable television, direct satellite reception or microwave distribution service. Subscription television operators pay a per customer subscription fee for the right to include the services in their cable transmissions. The operators receive the signal by means of satellite antennae.

Through various contractual agreements, Comcast has acquired the right to exhibit, perform and retransmit programming services to its customers. Comcast has master contracts with program suppliers authorizing the distribution of programming throughout Comcast Cable Systems. Comcast's master contracts authorize it to distribute HBO, Cinemax, ESPN, Showtime and The Movie Channel, among others.

The monthly charge paid by Comcast's customers is the primary source of revenue for Comcast's Cable Systems. The fees paid by subscription television service operators, including Comcast, are the primary source of revenue for the entertainment programming services.

The entertainment programming services and Comcast provide their customers with services different from those provided by "free" standard broadcast television. The signals transmitted via satellite to Comcast, other cable system operators and other fee-paying distributors, are intended for use only by such companies' paying customers, and are not transmitted for the benefit of or use by the general public.

The defendant Motel owns and operates the Holiday Inn in Corinth, Mississippi, which is within Comcast's Alcorn County, Mississippi franchise service area. Prior to this litigation, Motel was a paying customer-subscriber of Comcast. However, because of alleged problems with poor reception of the HBO programming service, Motel decided to cancel its subscription with Comcast and to install its own satellite system thereby allowing Motel to directly receive the entertainment programming

services' signals. In August, 1983, the defendant purchased and installed satellite dish antenna equipment on its premises. Motel apparently knew at the time of purchase that the equipment was capable of receiving all of plaintiffs' programming. The decision to purchase the equipment was made by Dalton Jones, the President of Motel.

The depositions reveal that during the two-year period between 1983 and 1985, the defendant received, *inter alia*, the Movie Channel, Showtime, Cinemax and ESPN programming services. Defendant admitted that it had no contract with, nor made any payments to, any of the plaintiffs or any other third party in order to obtain authorization to intercept and distribute plaintiffs' signals at its motel.

Defendant's interception, reception, exhibition, public performance and retransmission of the audiovisual works were made without the consent or license of the entertainment programming services, copyright owners, common carriers or Comcast, the authorized distributor of such programming in the franchise area. No part of the proceeds received from defendant's patrons for viewing of the audiovisual works has been paid to any of the plaintiffs.

### CONCLUSIONS OF LAW

This court has subject matter jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331. The state law claims are before the court pursuant to the doctrine of pendent jurisdiction. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

#### The Federal Communications Act

■ Section 605 of the Federal Communications Act of 1934 (amended and redesignated as section 705(a) effective December 29, 1984), 47 U.S.C.A. § 605 (West Supp.1986), provides in pertinent part:

[No] person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication [or any information therein contained] for his own benefit or for the benefit of another not entitled thereto....

*Id.* The entertainment programming services' satellite transmissions are radio communications within the meaning of sections 605 and 705(a). Because the alleged acts of Motel occurred both prior to and subsequent to the effective date of the 1984 amendment to section 605, liability is to be examined according to both versions. *See National Football League v. Alley, Inc.,* 624 F.Supp. 6, 9 (S.D.Fla.1983).

By virtue of their respective positions as purchasers and distributors of the various programming services, or as senders of private interstate communications, plaintiffs have important economic interests in the integrity of the communications system by which they distribute the subject programming.

■ Plaintiffs, HBO, ESPN, and Showtime, as senders of the satellite transmissions, are intended beneficiaries of the protection of the statute and have standing under 47 U.S.C. § 605. *Entertainment and Sports Programming Network, Inc. v. Edinburg Community Hotel,* 623 F.Supp. 647, 651 (D.C.Tex.1985). Because the plaintiffs did not authorize the defendant to receive their transmissions, they have suffered injury in fact under the Communications Act.

Comcast, as well, has demonstrated "injury in fact" under the Communications Act. The defendant's unauthorized reception, use and retransmission has deprived Comcast of customers. Moreover, Comcast has contracted and paid for the right to distribute various programming services in the Alcorn County area, which is a significant proprietary right. *American Television and Communications Corp. v. Western Techtronics, Inc.,* 529 F.Supp. 617, 621 (D.Colo.1982). The right has been damaged by defendant's unauthorized interception of the entertainment programming services' satellite transmissions.

■ The defendant's conduct amounts to several violations of section 605 and section 705(a). First, the defendant's overall

scheme of unauthorized interception of satellite transmissions and retransmission of such communications into guest rooms violates the first part of sections 605 and 705(a) in that defendant received and transmitted a communication and divulged or published the contents through unauthorized channels of transmission or reception. Second, because neither Comcast, HBO, Showtime nor ESPN have authorized the defendant to receive any satellite transmissions, defendant violated the second part of sections 605 and 705(a) in that the defendant was not "authorized by the sender [to] intercept," yet it divulged or published the " ... contents ... of such intercepted communication" to its guests. Third, throughout the installation, testing and use of the earth station to receive satellite transmissions for motel guests without authorization, the defendant engaged in a pattern of activity amounting to reception and use of satellite transmissions "for [its] own benefit or for the benefit of another not entitled thereto." Fourth, the defendant, by permitting its guests to view the programming, "assisted [its guests] in receiving" communications to which they are not entitled.

■ The satellite transmissions do not fall within the exception set forth in section 605 which permits reception of transmissions intended for the "use of the general public." Defendant's use of the subject transmissions also does not fall within the exception outlined in section 705(a) which permits the reception of satellite cable programming for private home viewing.

### Copyright Infringement

In counts II and III of the complaint, plaintiffs HBO and ESPN contend that defendant's display of certain copyrighted programming to its motel guests violated 17 U.S.C. §§ 106 and 111(b).

■ 17 U.S.C. § 106(4) and (5) provide that the owner of a copyright has the exclusive right to authorize the public performance and display of its copyrighted works. 17 U.S.C. § 101 defines "public performance" as the performance or display of a work to a substantial number of persons outside a normal circle of family or friends. A public performance also occurs when a work is transmitted with any device to the public for reception in separate places.

Additionally, 17 U.S.C. § 111(b) provides that the secondary transmission to the public of a primary transmission is actionable as an infringement under section 501 of the Copyright Act if the primary transmission is not made for reception by the public at large. The House Report on the Copyright Act of 1976 clearly contemplates that the secondary transmission of private copyrighted programming constitutes an infringement. According to the House Report:

[The] secondary transmission to the public of the primary transmission embodying a performance or display is actionable as an act of infringement if the primary transmission is not made for reception by the public at large but is controlled and limited to reception by particular members of the public. Examples of transmissions not intended for the general public are ... pay television (STV) or pay cable.

H.R.Rep. No. 94–1476, 94th Cong.2d Sess. 92 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5706.

17 U.S.C. § 501(a) declares that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 ... is an infringer of the copyright."

■ Both HBO and ESPN own copyrights to certain programming which they produce and display. Because the defendant has admitted to the interception of HBO and ESPN programming for a period of two years during which time certain copyrighted programs were displayed, the plaintiffs herein have made a showing that the defendant has publicly performed and secondarily transmitted the copyrighted works without the authorization of the copyright owners.

Defendant's conduct does not fall within any exception to either section 106 or section 111(b). For example, a section 106 public performance of a copyrighted work is not an infringement under section 110(5) if it is made by "a single receiving apparatus of a kind commonly used in private homes." Since plaintiffs' transmissions can only be received by regular television sets equipped with special equipment not commonly used in a home, the exception is inapplicable. Furthermore, the exceptions in section 111(b) require an unaltered signal carriage of a broadcast transmission. Since plaintiffs are not broadcast stations, the defendant is not required to carry the plaintiffs' signals, and because the signals are altered by defendants' receiving equipment, the exceptions in section 111(b) are inapplicable.

### Trademark Infringement

Plaintiffs, HBO and Showtime, contend in count IV of the complaint that the defendant also violated the Federal Trademark Act, 15 U.S.C. § 1114, by using and prominently displaying HBO's and Showtime's registered trademarks without authorization during the exhibition of the intercepted programming at its motel.

A trademark is infringed under 15 U.S.C. § 1114 when a person:

> use[s] in commerce [a] reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any good or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

*Exxon Corp. v. Texas Motor Exchange of Houston, Inc.*, 628 F.2d 500, 504 (5th Cir. 1980); *Armstrong Cork Co. v. World Carpets, Inc.*, 597 F.2d 496, 500 (5th Cir.), *cert. denied*, 444 U.S. 932, 100 S.Ct. 277, 62 L.Ed.2d 190 (1979).

In determining whether a trademark has been infringed, courts employ the "likelihood of confusion test," that is, whether the defendant's use of a mark in connection with the sale of goods or servic-es is likely to confuse consumers as to the source or origin of the goods. *See World Carpets, Inc. v. Dick Littrell's New World Carpets*, 438 F.2d 482 (5th Cir.1971). As stated by the fifth circuit in *Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368 (5th Cir.1977), reliance on the "likelihood of confusion test" demonstrates the courts' rejection of "any notion that a trademark is an owner's 'property' to be protected irrespective of its role in the operation of our markets. [Citation omitted.] Trademarks convey to purchasers a variety of information and, when a competitor's use of the same or similar marks interferes with this informational function, trademark infringement is established." *Id.* at 388–89. *See also International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 918–19 (9th Cir.1980).

In the case *sub judice*, it is undisputed that defendant's interception and retransmission of plaintiffs' programming was unauthorized. It is also undisputed that the subject programming bearing the "HBO" and "Showtime" trademarks did, in fact, originate with the plaintiffs. The plaintiffs therefore do not contend that the defendant's actions were likely to confuse consumers as to the source of the programming since the programming was genuine. Instead, plaintiffs suggest that the defendant violated their trademarks by misleading its motel guests into believing that it was affiliated with the plaintiffs.

In support of their position, plaintiffs rely on several cases which involve situations where the defendant continued to use plaintiff's trademark after the termination of a license agreement. *See Professional Golfers Association v. Bankers Life & Casualty Co.*, 514 F.2d 665 (5th Cir.1975); *see also Burger King Corp. v. Mason*, 710 F.2d 1480 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). These cases stand for the proposition that a "former licensee cannot mislead the public into believing that its affiliation continues once the licensing arrangement has ceased." *Professional Golfers*, 514

F.2d at 670. Such action constitutes trademark infringement.

The court finds that the above cases are inapposite since the instant case does not involve a licensing arrangement. Indeed, the rationale set forth in *Burger King* and *Professional Golfers* does not support a similar finding of trademark infringement in this case. In *Burger King*, for example, the court justified its finding that consumers would likely be confused or deceived by the former licensee's continued use of a trademark by observing that in such cases "[c]onsumers automatically would associate the trademark user with the registrant and assume that they would be affiliated. Any shortcomings of the franchise therefore would be attributed to [the registrant]." *Burger King*, 710 F.2d at 1493. The court thus implicitly recognized that consumers may be expected to rely on the oversight role invariably performed by the licensor/franchisor in situations where the quality of the product or service offered may potentially vary. The misconception on the part of the consumer as to the former licensee's continued affiliation with the registrant therefore carries with it an appreciable risk of detriment to both the consumer and the registrant. In the instant case, however, the confusion claimed by the plaintiffs does not involve the same risks inherent in the licensing cases. Here, HBO and Showtime have absolute control over the quality of their programming viewed at defendant's motel. There is, therefore, no risk to the consumer that the programs would be "something less" than what consumers would or should expect.

Accordingly, defendant's display of HBO and Showtime programming did not amount to an infringement of plaintiffs' trademarks inasmuch as the programming which contained the "HBO" and "Showtime" trademarks did in fact originate with the plaintiffs. In other words, the unauthorized display of authentic HBO and Showtime programming would not likely lead to the type of consumer confusion cognizable under the trademark laws. *Cf. Monte Carlo Shirt, Inc. v. Daewoo International (America) Corp.*, 707 F.2d 1054, 1058 (9th Cir.1983); *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 622 n. 1 (2d Cir.1980); *El Greco Leather Products Co. v. Shoe World, Inc.*, 599 F.Supp. 1380, 1392 (E.D.N.Y.1984); *Diamond Supply Co. v. Prudential Paper Products Co.*, 589 F.Supp. 470, 475 (S.D.N.Y.1984).

**Unfair Competition**

In count V of the complaint, plaintiffs HBO, ESPN and Showtime allege that defendant's action amounted to unfair competition and is thus actionable under 15 U.S.C. § 1125(a). Essentially, section 1125(a) prohibits any person from using any false designation of origin or false description or representation of any goods or services when such goods or services are caused to enter commerce. In addition, section 1125(a) prohibits persons with knowledge of the falsity of such description or representation from causing or procuring the goods or services to be transported or used in interstate commerce. The plaintiffs thus claim that the defendant violated section 1125(a) by falsely inferring and describing that (1) the entertainment programming services of HBO, ESPN and Showtime were paid for and lawfully obtained, (2) the defendant was authorized to receive and provide plaintiffs' programming services to its customers, and (3) the defendant was authorized by HBO, Showtime and ESPN to receive tangible and intangible benefits from its motel guests.

It must be emphasized, however, that although section 1125(a) is designed to protect against a broader range of deceptive or unfair trade practices than those subject to the proscriptions of section 1114, both sections require the same test to determine whether the particular action(s) complained of are violative of their terms. *See Kentucky Fried Chicken v. Diversified Packaging*, 549 F.2d 368, 386 (5th Cir. 1977); *Smithkline Beckman Corp. v. Pennex Products Co.*, 605 F.Supp. 746, 749 (E.D.Pa.1985). Thus, plaintiffs must show that the defendant's actions were likely to mislead customers into believing that the

product emanates from or has been endorsed by the plaintiffs.

Given the foregoing, plaintiffs' unfair competition claim must suffer the same fate as their trademark infringement claim since, although the programming offered for viewing at the defendant's motel was not paid for or "authorized" by the plaintiffs, the deception was not likely to mislead or confuse consumers as to the source or sponsorship of the subject programming.

### Injunctive Relief

Under 47 U.S.C. § 605(d)(3)(B)(i), this court is empowered to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain violations of subsection (a)." *See also* 17 U.S.C. § 502(a) (copyright infringement).

The granting of plaintiffs' motion for summary judgment on the issue of liability inevitably leads to the entry of a permanent injunction since plaintiffs have succeeded on the merits of their Communications Act and copyright infringement claims and have shown to the court that they are without adequate legal remedies.

Based on the foregoing Findings of Fact and Conclusions of Law, the court finds that plaintiffs' motion for summary judgment on the issue of liability and for a permanent injunction is well taken and should be granted as to the Federal Communications Act and Copyright Act claims and is otherwise not well taken and should be denied.

Let an order issue accordingly.

### ORDER

In accordance with a memorandum opinion this day issued in the above styled and numbered cause, it is hereby ORDERED:

That plaintiffs' motion for summary judgment on the issue of liability be, and is hereby, GRANTED with respect to their claims made pursuant to 47 U.S.C. § 605 (Federal Communications Act of 1934) and 17 U.S.C. §§ 106, 111(b) (copyright infringement);

That plaintiffs' motion for summary judgment on the issue of liability be, and is hereby, DENIED as to the remaining claims; and

That defendant Corinth Motel, Incorporated, d/b/a Holiday Inn and its partners, subsidiaries, affiliates, officers, agents, representatives, servants, employees, privies, and all persons in active concert and participation with them are hereby permanently enjoined from:

1. Intercepting, receiving, appropriating, converting to their own use, or retransmitting, divulging or using any satellite-delivered transmissions of plaintiffs' programming or signals, or any satellite-delivered programming which COMCAST makes or could make available to the public through its master contracts, without authorization from plaintiffs;

2. Assisting, aiding, abetting, or conspiring with any person to intercept, receive, appropriate, convert, or retransmit, divulge or use plaintiffs' programming or signals, without their authorization;

3. Intercepting, receiving, appropriating, converting to its own use, or retransmitting or using any copyrighted works or programming transmitted in plaintiffs' satellite transmissions, without their authorization; and

4. Assisting, aiding, abetting, or conspiring with any person to intercept, receive, appropriate, convert or retransmit, divulge or use plaintiffs HBO's and ESPN's copyrighted works, programming, or signals transmitted by satellite, without their authorization.