**Jacob L. DEHEVE, Plaintiff,**

v.

**Ann PRICE and Renee Cipriano, Defendants.**

**No. 00–3042.**

United States District Court, C.D. Illinois, Springfield Division.

Feb. 28, 2002.

---

Mary Lee Leahy, Leahy Law Offices, Springfield, IL, for Plaintiff.

Jeffrey D. Colman, David Jiménez–Ekman, Lisa M. Whitlock, Deborah R. Alexander, Jenner & Block, LLC, Chicago, IL, for Defendants.

## ORDER

SCOTT, District Judge.

This matter comes before the Court on Defendants Ann Price and Renee Cipriano's Motion for Summary Judgment. DeHeve claims that Defendants violated his First Amendment rights when they refused to hire him for a maintenance position at the Illinois Environmental Protection Agency (IEPA). The parties have adequately briefed the issues. The Court therefore denies the Defendants' request for oral argument. The uncontroverted evidence establishes that DeHeve chose to support the Republican Party. There is no evidence that his political affiliation with the Republican Party adversely affected his application for the position at issue. The Court therefore grants the Defendants' Motion for Summary Judgment.

## STATEMENT OF THE FACTS

In 1996, DeHeve was looking for a job with the State of Illinois. He asked his sister for help.[1] His sister was a precinct committeeman for the Republican Party in Sangamon County, Illinois. She told him she would look into it. Shortly thereafter, DeHeve got a six month contract to work as a security guard with the Illinois Department of Mental Health.

Not long after that contract expired, Defendant Ann Price left a message on DeHeve's answering machine that she was calling about a job at IEPA. Price is the Manager of Human Resources at IEPA. DeHeve called his sister; she said that she would talk to Irv Smith about the position. Smith is Chairman of the Sanagamon County, Illinois, Republican Party. DeHeve did not know Smith's position, but knew Smith was a "big shot" in the Party. DeHeve called Price back. Price told De-

---

[1] For purposes of this motion, the Court views the facts in the light most favorable to DeHeve. Defendants dispute many of the facts stated herein.

Heve that there was a maintenance position at IEPA. DeHeve interviewed for the position and was hired. DeHeve believes that he was considered for the temporary position because of his sister's efforts within the Republican Party.

DeHeve learned at the interview at IEPA that the maintenance position was technically a temporary position. He would actually be employed by Alice Campbell Temporary Service. IEPA employees, however, selected him for the job and supervised him. DeHeve began work on February 3, 1997. He worked 37½ hours a week. He worked a day shift.

On June 16, 1998, DeHeve secured an evening dispatcher job at the Illinois Emergency Management Agency (IEMA). His shift at IEMA was from 4:00 p.m. to 12:00 a.m. He did not use political connections to secure this job. At some point in 1999, a person with more seniority than he at IEMA elected to take the evening dispatcher shift. This meant DeHeve had to work the day shift. This interfered with his maintenance job at IEPA. DeHeve and the other IEMA employee agreed to split the day and evening shifts. DeHeve was then able to continue to work at IEPA for 21 hours per week.

DeHeve regularly told Price and others at IEPA that he was interested in a permanent position at IEPA. In the fall of 1999, DeHeve learned that a permanent position in a maintenance department at IEPA would be opening up. The opening was posted on November 16, 1999. He asked about transferring to the position from IEMA, but was told that was not possible. He applied for the maintenance position as an outside applicant. He had a grade A score on the civil service exam and had a veteran's preference.

DeHeve learned from employees at IEPA that a man named Lance Bauman would be hired for the IEPA maintenance position. Bauman was working at the Secretary of State's office. Bauman did not apply for the job as an outside applicant. Bauman had contacted a friend in Governor George Ryan's office to see about the possibility of a transfer to a position in an office under the Governor. Ryan, a Republican, had previously been Secretary of State. The current Secretary of State, Jesse White, is a Democrat. Bauman's friend in the Governor's office contacted IEPA about considering Bauman for the position. The IEPA is under the control of the Governor. Bauman ultimately secured the position through an interagency transfer from the Secretary of State's office to the IEPA. As a result, the IEPA did not need to consider outside applicants such as DeHeve for the position.

■ DeHeve went to speak with Price on December 8, 1999, to find out why he would not get the job. According to DeHeve, Price told him that the Governor himself called her about the position. Price said that she contacted the Governor or the Governor's office about DeHeve's interest in the job, but she was told that if she did not keep her nose out of it she would lose her job.[2]

Price advised DeHeve to contact Irv Smith. DeHeve contacted Teresa Starling, his precinct committeeman for the Sangamon, County, Illinois Republican Party. She told him to contact Republican headquarters. On December 9, 1999, DeHeve spoke to a person named Brenda at Republican headquarters. She said she would get him an interview and would call him back. She never did.

2. The Defendants argue that the substance of any statements by the Governor or his representative in these phone calls is inadmissible hearsay. Their statements may not be admissible to prove the truth of the matter asserted, but the statements are admissible to establish Price's motivation for hiring Bauman instead of DeHeve.

Both DeHeve and Bauman supported the Republican Party, although Bauman was more active. Bauman worked on several of Ryan's campaigns. He put up signs in yards, walked in parades, walked door to door, bought tickets for fund raising events, and made contributions to Ryan's campaigns. DeHeve put up signs in his own yard, bought a ticket in 1997 to a Ryan fund raising event, sent Ann Price $25 as a contribution for a Ryan fund raising event, and made a $10 contribution to the Republican Party. In 1997, Price had sent DeHeve two tickets to the above referenced Ryan fund raising event. She wanted him to purchase the tickets. He returned the tickets to Price with a note in which he explained that he bought a fund raising ticket at IEMA. He sent her the $25 contribution with the returned tickets.[3]

On December 20, 1999, DeHeve resigned from his position at IEPA. His fellow employee at IEMA would no longer agree to split the day and evening shifts with him. She had more seniority and preferred the evening shift. He thus had to work full-time on days at IEMA and could no longer work the temporary job at IEPA. He then brought this action under 42 U.S.C. § 1983. He named Price in her personal and official capacities. He named IEPA Director Renee Cipriano in her official capacity only to secure prospective injunctive relief.[4]

### ANALYSIS

■ DeHeve claims that Defendants violated his First Amendment rights by not hiring him because of his political affiliation. The state may not discriminate against a person in hiring because of his political affiliation. *Rutan v. Republican Party of Illinois,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990). Such discrimination violates the individual's First Amendment right to associate with the political party of his choosing. In *Rutan,* plaintiff James Moore alleged that the state of Illinois refused to hire him because he did not support the Republican Party. The Supreme Court stated, "If Moore's application was set aside because he chose not to support the Republican Party, as he asserts, then Moore's First Amendment rights have been violated." 497 U.S. at 79, 110 S.Ct. 2729.

■ Defendants have moved for summary judgment claiming that no evidence indicates that they discriminated against DeHeve because of his political affiliation. At summary judgment, the Defendants must present evidence which demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must consider the evidence presented in the light most favorable to DeHeve. Any doubt as to the existence of a genuine issue for trial is resolved against the Defendants. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Once the Defendants have produced evidence showing that they are entitled to summary judgment, DeHeve must present evidence to show that issues of fact remain. *Matsushita Elec. Ind. Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 576, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In this context, DeHeve must present evidence that his political affiliation or non-affiliation was a substantial or motivating factor in the Defendants' decision not to

---

**3.** In addition, DeHeve's sister bought him tickets to a fund raising event for Republican Karen Hasara when she was running for mayor of Springfield, Illinois. Springfield is located in Sangamon County, Illinois.

**4.** DeHeve previously named Cipriano's predecessor, Thomas Skinner, in both his personal and official capacity. He subsequently dismissed his claims against Skinner.

hire him as a maintenance worker at IEPA. *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 284, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *Nelms v. Modisett,* 153 F.3d 815, 818 (7th Cir.1998).[5] DeHeve has failed to meet this burden.

There is no evidence that DeHeve's affiliation with the Republican Party was a motivating factor in the decision not to hire him for the maintenance position at IEPA. If anything, the affiliation helped his chances to get the job. DeHeve believes that Price contacted him in 1997 for the temporary maintenance position at IEPA at least in part because of the intervention of his sister, a Republican Party precinct committeeman. When a permanent position opened up, Price told DeHeve that she called the Governor's office to inform it of DeHeve's interest in the position. Representatives in the office of Republican Governor Ryan, however, selected Bauman instead of DeHeve for the position. DeHeve then sought recourse through his Republican Party committeeman when he discovered that a different Republican supporter would receive the position. This time, DeHeve's Republican affiliation did not get him the job, but there is no evidence, "that his application was set aside because he chose" to support the Republican Party. 497 U.S. at 79, 110 S.Ct. 2729. Rather, the evidence indicates that Ryan merely picked a different Republican supporter for the slot.

DeHeve argues that the Defendants' use of political considerations in hiring violated DeHeve's rights. The Court disagrees. The *Rutan* line of cases stand for the proposition that persons acting under color of law violate individuals' First Amendment rights when they use public employment decisions to coerce individuals to adopt particular political positions or affili-

ations or to punish individuals who elect to affiliate with an opposing parties or political positions. *Elrod v. Burns,* 427 U.S. 347, 357, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)("Patronage, therefore to the extent it compels or restrains belief and association is inimical to the process which undergirds our system of government and is 'at war with the deeper traditions of democracy embodied in the First Amendment.'" *quoting Illinois State Employees Union v. Lewis,* 473 F.2d 561, 576 (7th Cir.1972))(Brennan, J., plurality opinion), *Branti v. Finkel,* 445 U.S. 507, 517, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980)("To prevail in this type of an action, it was sufficient, as *Elrod* holds, for respondents to prove that they were discharged 'solely for the reason that they were not affiliated with or sponsored by the Democratic Party.'" *quoting Elrod,* 427 U.S. at 350, 96 S.Ct. 2673.); *Rutan,* 497 U.S. at 79, 110 S.Ct. 2729; *O'Hare Truck Service v. City of Northlake,* 518 U.S. 712, 721, 116 S.Ct. 2353, 135 L.Ed.2d 874 (1996).

DeHeve presents no evidence that he was either coerced into supporting Republicans or punished because of his political affiliation. DeHeve implies that Price may have been punishing him because he once declined to buy fund raising tickets from her. DeHeve sent Price $25 and bought a ticket for the fund raiser from someone at IEMA. No evidence, however, indicates that Price held any animosity toward DeHeve because of this. Rather, she contacted the Governor's office to inform it of DeHeve's interest in the maintenance position. That is not the actions of a person who wanted to harm DeHeve.

Further, DeHeve's evidence, if believed, shows that Price had no control over the decision. Representatives of the Gover-

---

5. DeHeve urges the Court to use the *McDonnell Douglas* burden shifting analysis in this case. That analysis is not appropriate for a

§ 1983 First Amendment *Eldon/Branti/Rutan* claim. *Winkelman v. Magne,* 173 F.Supp.2d 821, 825 (C.D.Ill.2001).

nor's office called IEPA representatives and told them to hire Bauman. Price stated that her job was threatened when she even mentioned DeHeve's name. Her attitude toward DeHeve was irrelevant to the decision.

DeHeve's political affiliation with the Republican Party did not adversely affect his chances to get this job. DeHeve's evidence indicates that persons in the Governor's office wanted a Republican supporter for the position; they simply wanted a different Republican supporter. DeHeve's political affiliation therefore was *not* a substantial or motivating factor in the Defendants' decision not to hire him as a maintenance worker at IEPA. *Mt. Healthy,* 429 U.S. at 284, 97 S.Ct. 568. The Defendants therefore did not violate DeHeve's First Amendment rights.

DeHeve cites two cases for the proposition that an individual may maintain § 1983 action against persons of the same political party who made employment decisions based on political considerations: *Vickery v. Jones,* 100 F.3d 1334 (7th Cir. 1996), and *McCloud v. Testa,* 97 F.3d 1536 (6th Cir.1996). The *Vickery* opinion does not so hold, and the *McCloud* opinion does not apply to DeHeve's situation. The *Vickery* Court did not address the issue of same party affiliation. The Court addressed whether the principals in the *Rutan* case extended to protect temporary employment. *Jones,* 100 F.3d at 1338–40, 1346–48. Because the Court did not address the issue, the case has no precedential value on the issue presented here. *See Natl. Cable Television Ass'n, Inc. v. Amer. Cinema Editors, Inc.,* 937 F.2d 1572, 1581 (D.C.Cir.1991). The *McCloud* Court held that when parties split into non-ideological factions, a person may not be discriminated against because he belonged to the faction that was out of power. *McCloud,* 97 F.3d at 1536. DeHeve has presented no evidence of any factions

in the Republican Party in Illinois, or that he was affiliated with a group of Republicans that were out of favor. The *McCloud* case is not applicable.

Therefore, the Defendants' Motion for Summary Judgment (d/e 53) is ALLOWED. The Defendants' Motion for Oral Argument (d/e 67) is DENIED. All other motions are DENIED as moot. Judgment is entered in favor of Defendants and against Plaintiff Jacob DeHeve. This case is closed.

IT IS THEREFORE SO ORDERED.