**DIRECTV, INC.**

v.

**Mark D. MORRIS, et al.**

**No. 4:03CV201.**

United States District Court,
E.D. Texas,
Sherman Division.

Aug. 30, 2004.

Gloria Ho of Greer Herz & Adams, Galveston, TX, Reginald Beets Smith, Jr., Sherman, TX, for Plaintiffs.

Peter A. Lesser, James Alphonso Cox of Carrington Sloman & Blumenthal, Tracey E. Gajak of Sullivan, Parker & Cook, Dal-

las, TX, for Defendants Mark D. Morris, Rob Morris, Todd Palermo.

## MEMORANDUM ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

SCHELL, District Judge.

Came on for consideration the Report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636. On July 19, 2004, the Report of the Magistrate Judge was entered containing proposed findings of fact and recommendations that Defendant Mark Morris's Motion for Summary Judgment be granted and the claims against Defendant be dismissed with prejudice.

Having received the report of the United States Magistrate Judge, and finding the Plaintiff's objections be without merit, this Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct and adopts the same as the findings and conclusions of the Court. It is therefore,

**ORDERED, ADJUDGED** and **DE-CREED** that Defendant Mark Morris's Motion for Summary Judgment should be granted, and the claims against Defendant dismissed without prejudice.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

BUSH, United States Magistrate Judge.

Before the Court is Defendant Mark Morris' Motion for Summary Judgment. Plaintiff, Directv (Direct), filed this instant complaint against Morris and others alleging violations of 47 U.S.C. § 605(e)(3)(C); 18 U.S.C. § 2511; 18 U.S.C. § 2512; 47 U.S.C. § 605(e)(4); civil conversion; and Tex. Civ. Prac. and Remedies Code § 123.001. All of Direct's complaints center around what it contends is the unauthorized interception of its satellite programming by Morris.

According to the pleadings filed in this Court in this case as well as other cases, Direct is a direct-to-home satellite services company. Direct transmits its programming from ground locations to its six satellites in geosynchronous orbit around the earth. Programming is then transmitted in the form of encrypted radio signals from the six satellites back to subscribers on planet earth. In order to receive transmissions from outer space, subscribers are required to utilize a set of equipment commonly referred to as a DIRECTV system. The system consists of a DIRECTV-compatible satellite dish, a receiver, an access card, a television set and cable to connect the components together. The receiver is also known as an "integrated receiver/decoder" or IRD. The IRD is a device placed near a television set that displays programming. Signals from a satellite are received via the compatible satellite dish and transmitted via cable to the IRD. The IRD then processes and decrypts the incoming signals with assistance from an access card inserted into the IRD. Once decrypted, the signals are then transmitted from the IRD via cable to the television set where the subscriber can enjoy the program of his or her choice. An authorized access card allows only those channels which have been subscribed to or purchased by the viewer to be decrypted and provided for viewing. It appears, although not specifically pointed out, that each subscriber must pay a basic rate for a specific number of channels and programming. Higher rates will allow the customer to select from a greater variety of programming and entertainment.

Direct contends that because it has acquired such a complete lineup of quality programming, individuals go to great

lengths to circumvent Direct's encryption and security devices. This practice, according to Direct, is signal piracy and the individuals who stand accused will be referred to as "pirates." It is Direct's concerted action to haul these pirates before the mast to answer for their misdeeds. According to Direct, these twenty first century pirates have purchased illegally altered access cards or other devices to "surreptitiously intercept" Direct's programming. In fact, the Complaint states that there has been a surreptitious possession and use of illegal devices to intercept and decrypt Directv's protected satellite communications. Allegations as to actual interception are made on information and belief. In fact, one is branded a pirate by the receipt of devices that Direct contends are used primarily for interception.

To be entitled to summary judgment, the movant must either prove there is no genuine issue of material fact and that it is entitled to judgment as a matter of law or show that there is no evidence to support the non-moving party's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court is charged with viewing the evidence and inferences in the light most favorable to the non-movant; however, the resisting party may not rest on its allegations or unsubstantiated assertions. *Reese v. Anderson,* 926 F.2d 494, 498 (5th Cir.1991). The non-movant's burden is not satisfied by "some metaphysical doubt as to material facts," conclusory allegations, unsubstantiated assertions, speculation, the mere existence of some alleged factual dispute, or "only a scintilla of evidence." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994). For circumstantial evidence to be sufficient to allow the non-

movant to withstand summary judgment, the evidence must be more than that which might "raise some eyebrows." *See Coffey v. Cox,* 218 F.Supp.2d 997 (C.D.Ill.2002).

Mr. Morris has filed an affidavit under oath. Morris states that he never used any device to intercept Direct's TV satellite signals, nor did he receive any programming for which he did not pay Direct its subscription charges. He was a subscriber from 1994 to 2000. He is a trucker with a high school education and no technical training. He stated he went to a DSS website that demonstrated a number of links. He read about smart cards and was interested in purchasing a DSS card reader. However, when he received the reader, there were no accompanying instructions. Thereafter, he downloaded a file from a website in order to read the smart card. He said nothing made sense when he tried to read the card and took the card back out of the reader device and put it back into the DSS device. His wife became upset when he, in effect, disabled the system. He did go back online to research what he had done inadvertently. He said that in a chat room he was told to purchase an unlooper device to fix the smart card. He denies knowing that any site he visited was a "pirate site." Nothing worked and his wife only got angrier. He put the devices away and never used them again. At no time did he ever intercept any signals or assemble either of the devices. In essence, Morris states that he experimented with a smart card device and completely messed up his system.

■ Direct has filed a response with accompanying affidavits. First, Direct offers the affidavit of Ron Whalen. Whalen states that he is the Senior Director for Direct's Office of Signal Integrity. He claims to be familiar with the usual business practices of Direct in investigating pirates. He claims the devices purchased

by Morris are primarily designed, marketed or distributed to be used in order to obtain unauthorized satellite signals. He states that the unlooper purchased by Morris was purchased to restore functionality to illegally modified Access Cards disabled by misuse or by Direct's electronic counter measures. However, there is a problem with the affidavit in that it is not a proper affidavit. Defendant has failed to point out this obvious defect. Therefore, the Court is left with the task of determining what to consider in light of the obvious deficiency. There is no averment that the statement is true and correct; therefore, the affidavit should be disregarded as summary judgment proof. *Nissho–Iwai American Corp. v. Kline*, 845 F.2d 1300 (5th Cir.1988). Further, there is no averment that the affidavit is based on personal knowledge. The failure of an affidavit to state that the facts contained in it are based on the affiant's personal knowledge renders the affidavit deficient for the purposes of summary judgment. *Bolduc v. National Semiconductor Corp.*, 35 F.Supp.2d 106 (D.Me.1998). Nevertheless, such failure may be cured by a declaration in the body of the affidavit. *Id.* at 111. The best Whalen can do is to state that he is familiar with certain practices. Nowhere in the affidavit is there a statement that anything he says is based on personal knowledge. The Court declines to hold that personal knowledge and familiarity are equivalent. Likewise, the affidavit of the records custodian, Fong–Hilton, should be disregarded since there is no averment that the facts are true and correct. However, the Court notes that the records merely indicate what Morris has already testified to in his affidavit.

Next, Direct has attached several expert reports. Direct attempts to authenticate these reports through Bill Gatliff. Although Gatliff does not state that he has personal knowledge of the facts to which he is testifying, he does provide informa-

tion that the Court can at least determine he probably has some personal knowledge. Unlike the other affidavits, Gatliff avers that the facts to which he testifies are true and correct under the penalties of perjury. However, there is no declaration that he has personal knowledge of the facts, only that he has personally analyzed "several different types of devices distributed by various vendors." Gatliff states that it is the regular course of business for his company to generate and maintain expert reports. In essence, Netrino, his employer, appears to be an expert report generating company. There is no averment that he is the custodian of the reports which he attempts to attach. He states that the reports attached as Exhibit 1 are incorporated into his affidavit and that he adopts the conclusions of the various reports. Attached to Exhibit 1 are 45 pages of generic, "cookie cutter technical mumbo jumbo," none of which specifically address Morris. Some of the reports are not even signed by the supposed expert. Moreover, the Court notes that Exhibit 1 has somehow been obliterated and there are a series of attachments (C–1—C–2) which are not even mentioned in the affidavit.

The Court is left with the task of trying to determine whether there is anything to consider. First, even given the fact that Morris purchased a *White Viper Programmer*, the business record report deals with a *White Viper Reader Writer*. Maybe the two are one in the same, but there is nothing in the record to so indicate. Further, the "affidavit" of Whalen states that Morris purchased a *terminator enclosed case unlooper*. However, the report attached to Gatliff's affidavit references a *terminator unlooper*. The Court need not sift through all the pages of technical jargon to determine what Plaintiff refers to if Plaintiff refuses to take the time and consideration to point out what it is talking about. This is nothing but sloppy prepara-

tion which the Court has addressed with Direct and its counsel on several occasions. Evidently, this is a hopeless task and has left no impression on the Plaintiff. Although the Court can allow supplementation, the Court declines to do so.

First, as stated, the Defendant has failed to point out these problems, but it is the Plaintiff's burden to submit its affidavits in correct form. Second, most of the affidavits are purely speculative and not in proper form. Whalen's statement that the unlooper was purchased to get around Direct's ECM is not supported anywhere in any record the Court has reviewed in this case. The only ECM the Court is familiar with is "Black Sunday" noted frequently in Direct's briefs. However, Morris purchased the unlooper device almost a year before Black Sunday. Whalen also states that the purchase of the unlooper indicates prior unauthorized access noting that the account was suspended in March 2000 but the device was not purchased until September 2000. Moreover, the only other device purchased by Morris was purchased in August 2000, some five months after his account was suspended. Even if Whalen's affidavit was in proper form, it raises no real fact issue for the Court to consider as to Morris' account.

The Court must also disregard the affidavit of Smith to prove up the deposition transcripts. An affidavit from counsel, without more, is insufficient to authenticate the deposition pages. *See generally Orr v. Bank of America, NT & SA*, 285 F.3d 764 (9th Cir.2002); Fed.R.Civ.P. 30(f).

Direct totally fails to "connect the dots" in its response. The one right thing Direct has done is to attach responses to its request for admissions and interrogatories. Essentially, Morris only admits to receiving the two devices noted above and denies the balance of the requests. As to all interrogatories, Morris invoked the Fifth Amendment since some of the statutes sued upon also involve criminal penalties. The Court is free to consider this refusal to testify and can give it any weight it deems appropriate. While the law does not forbid adverse inferences against civil litigants who refuse to testify on Fifth Amendment grounds, it does not mandate such inferences. *In Re Carp*, 340 F.3d 15 (1st Cir.2003). Direct has sued thousands of individuals nationwide. In Court, Direct's counsel has noted a number of criminal convictions obtained. The Court is also aware that a number of individuals were notified by one of the law firms in this case and mention was made of possible criminal violations. Without commenting on whether such notification was proper in the context made, under all of the circumstances, Morris cannot be penalized for exercising his Fifth Amendment Right. In light of Morris' affidavit, the Court draws no negative inference from the exercise of his constitutional right.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the summary judgment must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not require the Court to search the record to find evidence to support opposition to the motion. *Id.* Here, that is exactly what the Plaintiff has left the Court to do for the most part. Even though the affidavits are deficient, they do little to aid in pointing the Court to evidence that should negate Morris'

right to summary judgment. The Court has considered the affidavits in the defective form previously noted but finds them to be of little value. Against this background, the Court addresses the legal issues presented.

Direct has sued under the provisions of 47 U.S.C. § 605(e)(3)(A). This section permits an aggrieved party, as defined in 605(d)(6), to obtain civil relief in the form of actual damages or statutory damages. 47 U.S.C. § 605(a) contains certain prohibitions concerning radio communications. The section provides that no person shall receive radio communications for his own benefit if he is not entitled to receive such communications. The section also prohibits anyone who knows that a radio communication is intercepted from divulging its contents or use such communication for his own benefit. 47 U.S.C. § 153 defines radio communication as a transmission by radio of writing, signs, signals, pictures, and sounds of all kinds, including all instrumentalities, facilities, apparatus, and services (among other things, the receipt, forwarding and delivery of communications) incidental to such transmission. Although not statutorily defined, the question is whether satellite communications are within the definition of radio communications. Courts have held that satellite communications as well as TV signals are radio communications. *Home Box Office, Inc. v. Corinth Motel, Inc.,* 647 F.Supp. 1186 (N.D.Miss.1986); *Kingvision Pay–Per–View, Ltd. v. Scott E's Pub Inc.,* 146 F.Supp.2d 955 (E.D.Wis.2001). Section 605(e)(3)(A) allows an aggrieved party to bring a suit for civil damages. Section 605(d) defines "any person aggrieved" as including "any person with proprietary rights in the intercepted communication by wire or radio, ... ...." To have standing and to assert jurisdiction, Direct must be an aggrieved party. An aggrieved party must have an interest in a communication which is intercepted. Although not de-

fined in § 605, interception is defined in 18 U.S.C. § 2510(4) as the "aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical or other device." Electronic communication includes radio transmission. 18 U.S.C. § 2510(12).

■ Section 605 gives an aggrieved party two opportunities to recover damages. Section 605(e)(3)(A) provides for the recovery of actual damages for violations of subsection (a) or paragraph (4) of the section. The Court notes that Direct has significant hurdles in proving its case. First, it may sue for actual damages as well as the loss of profits. However, there is no evidence that Direct sustained any actual damages or loss of profits. Therefore, it cannot recover under § 605(e)(3)(C)(i)(I). Therefore, Direct may recover only under § 605(e)(3)(C)(i)(II), if at all. Direct's only option is to recover for statutory damages for each violation of subsection (a) or paragraph (4). However, to recover, it must show actual interception under subsection (a). There is no evidence that Morris ever intercepted any satellite transmissions. The fact that he had the opportunity is wholly deficient to sustain an award for statutory damages. Therefore, the last recourse available to Directv is paragraph (4).

■ Paragraph (4) provides for criminal penalties for any person who *manufactures, assembles, modifies, imports, exports, sells, or distributes* any electronic, mechanical, or other device or equipment, knowing or having reason to know that the device or equipment is primarily of assistance in the unauthorized decryption of direct-to-home satellite services. Direct pleads that Morris programmed or reprogrammed access card devices to be inserted into authorized Direct receivers. How-

ever, there is no direct evidence that he ever did so and the only direct evidence is his sworn affidavit that he did not do so. There is simply no evidence that he manufactured any device; nor assembled any device; nor modified any device; nor imported or exported any device. Paragraph (4) deals with conduct of merchants in the pirate trade, not necessarily the ultimate end users. Perhaps Direct could argue that an individual end user could be liable for modification of equipment. However, the penalties and remedies established for a violation of this chapter apply to each device so modified, etc. Mere possession cannot rise to a finding of modification. It all boils down to this argument—for the Defendant, I did not do it; for the Plaintiff, but you could have done it with the device purchased. In this case, the Plaintiff cannot overcome Defendant's motion. Even if Direct could make Morris look like a pirate based on circumstantial evidence, it could not prove he was one. If Direct cannot prove interception, there can be no award of statutory damages. Given the facts of this case, any award of statutory damages would be purely speculative.

18 U.S.C. § 2511 proscribes the intentional interception or attempted interception of any electronic communication. 18 U.S.C. § 2510(12) defines such communications, in part, as a transfer of signals by radio which, as noted above, includes satellite transmissions. 18 U.S.C. § 2520(a) provides for civil relief for a person whose electronic communication is intercepted. However, for the reasons expressed herein, since there is no evidence of interception, there can be no violation. Morris stated that he has never intercepted any signal. Even considering the affidavit of Whalen in its improper and conclusionary form, Direct raises no issue to the contrary. Direct claims that items purchased several months after suspension of service raise an issue of fact. The Court disagrees.

18 U.S.C. § 2512 makes it unlawful for any person to intentionally manufacture, assemble, possess or sell any electronic, mechanical, or other device, knowing or having reason to know that the design of such device renders it primarily useful for the purpose of the surreptitious interception of wire, oral or electronic communications. There is no specific provision for a right to bring a civil action under the referenced statute. Here, Direct contends that 18 U.S.C. § 2520(a) provides a right for civil relief for a violation of 18 U.S.C. § 2512. Section 2520(a) provides civil relief for any person whose wire, oral or electronic communication is *intercepted, disclosed, or intentionally used* in violation of this chapter. In many cases, Direct has agreed that § 2512 does not provide a civil relief for mere possession. Lately, Direct has not sued on this ground.

Even within the districts in Texas, there is a difference in opinion as to whether § 2512 allows a private cause of action for mere possession. These cases were cited in the Court's Report and Recommendation in Case No. 4:03–CV–98. No objections were filed as to the Court's conclusion that § 2512 does not authorize a private cause of action for mere possession. As stated previously, the language of the statute is plain and simple. In interpreting a statute, the starting point is the language of the statute itself. *Gonzalez v. McNary,* 980 F.2d 1418, 1420 (11th Cir.1993). A recent decision provides a succinct analysis of the various decisions across the country in determining whether or not a private cause of action exists under § 2512. *See generally DIRECTV, Inc. v. Boggess,* 300 F.Supp.2d 444 (S.D.W.Va.2004). Judge Howell Cobb has settled this question in this district. *See Directv, Inc. v. Alberts,* Case No. 1:03–CV–161 (E.D.Tex.2003). There is no private cause of action under § 2512. Direct

does not address this issue in its brief and the Court assumes that it has now abandoned that point.

Direct's claims for civil conversion and violations of the Tex. Civ. Prac. and Remedies Code Chapter 123 also fail in that there has been no showing of an attempted or actual interception. Further, there has been no showing of actual theft of property to warrant a finding of conversion. *See generally P & T Mfg. Co., Inc. v. Exchange Sav. and Loan Ass'n.,* 633 S.W.2d 332 (Tex.App.—Dallas 1982, *writ ref'd n.r.e.*).

There is no direct evidence that Morris ever attempted to intercept or intercepted Direct's signals. Several cases out of the Western District of Michigan have concluded that circumstantial evidence can defeat a motion for summary judgment in these type of cases. However, in *DIRECTV, Inc. v. Brower,* 303 F.Supp.2d 856, 863 (W.D.Mich.2004), the Court notes that the "pirate" confessed to purchasing a device to intercept signals, but twenty first century technology left him in the dark. The Court also noted that Direct had pointed out discrepancies in the billing records which would indicate interception. There is no confession or billing discrepancies in the case before the Court.

Direct's inability to organize its proof in a coherent and acceptable form leaves the Court with little option but to grant the motion for summary judgment. Unless Direct can submit affidavits in acceptable form, adhere to the Federal Rules of Civil Procedure and organize its proof in an acceptable way, the Court will have no alternative but to grant like motions. The Court could allow Direct time to supplement but, given what Direct has attached as well as the upcoming trial schedule, the Court declines to grant Direct an opportunity to repair what it most likely cannot fix in any event.

## RECOMMENDATION

Based upon the foregoing, it is the Court's recommendation that Mark Morris' Motion for Summary Judgment should be GRANTED and the Plaintiff's case as to Mark Morris should be DISMISSED WITH PREJUDICE.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. § 636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

July 19, 2004.